## HAUPTMAN *v.* UNITED STATES (No. 2543) [1]

1. SECTION 489, TARIFF ACT OF 1922—REMISSION OF ADDITIONAL DUTIES.
   Under section 489, Tariff Act of 1922, an importer may petition the Board of United States General Appraisers for remission of additional duties imposed for undervaluation without appealing to reappraisement.

2. SAME—EVIDENCE—ADMISSIBILITY—TESTIMONY OF INTENTION—WEIGHT AND SUFFICIENCY.
   Testimony by importer at the trial of a petition under section 489, Tariff Act of 1922, for remission of additional duties, that he paid a certain price for the goods and that he had no fraudulent intent in making the entry valuation is admissible, but is not sufficient in this case to warrant a finding in his favor. Nor is it when added to his testimony that he visited Germany and bought the goods after an investigation of their market value and that, at the time of entry, he knew of no higher value at which he should have entered the goods.

United States Court of Customs Appeals, November 21, 1925

APPEAL from Board of United States General Appraisers, G. A. 8945 (T. D. 40711).

[Affirmed.]

*William M. Wemple* for appellant.
*William W. Hoppin,* Assistant Attorney General (*Peter A. Abeles,* special attorney, of counsel), for the United States.

[Oral argument Oct. 29, 1925, by Mr. Wemple and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers denying the petition of the appellant for remission of additional duties.

---

[1] T. D. 41218.

The following claims were made in the petition filed in the court below:

*     *     *     *     *     *     *

3. The differences between the invoice prices were so slight being upon invoice No. 5 an advance from $2 to $2.10 per set of china (or 5 per centum) and upon invoice No. 11 from 6 cents to 7 cents (or 16 per centum) that the importer preferred to petition for remission of the penalty than to endeavor to procure supporting evidence of market values from trade competitors.

4. The entry contained 12 other invoices of ad valorem duty paying goods which were appraised as entered, thereby indicating the good faith and integrity of the entry of the two invoices in question.

5. The total value of the 14 invoices of the entry was $5,643, while the additional regular duty under the appraisement of invoice No. 5 was $34 and No. 11 was $27, thereby indicating, which fact is alleged, that there was no intent to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

6. The merchandise was actually purchased at the invoice prices, notwithstanding the appraisements, and no other prices or more money was paid for the goods.

7. Mr. A. Hauptman, president of the importer, was in Germany at about the time of the invoices and asserts that said prices were in accord with the market values.   *   *   *

On the trial, the president of the petitioner was called as a witness and testified that he purchased the merchandise upon which additional duties were assessed in Carlsbad, Germany; that he secured information as to the market value of the merchandise by talking with various manufacturers at the time he purchased the same; that he entered the goods at the invoice price, which was the price paid for the same; that in entering the merchandise at a less value than that returned on final appraisement he had no intention to defraud the revenue of the United States or to conceal or misrepresent the facts or to deceive the appraiser; and that though ordinarily he had his clerk inquire of the appraiser as to the value at which merchandise imported by his company should be entered, no inquiry was made of the appraiser in this particular instance because he was confident that the price stated in the invoice was "exactly the same price as other people were bringing that over." Testifying in regard to his knowledge as to the foreign value at the time of exportation, he said:

*     *     *     *     *     *     *

Q. Now, at that time, which was about October 18, 1923, did you know of any value or price higher than the invoice at which you should have entered these goods?—A. No.

*     *     *     *     *     *     *

The WITNESS. Before the entry, there was no such thing, to my knowledge, that the price was supposed to be higher; otherwise, I would have asked the appraiser first, in order to save this litigation.

That portion of the merchandise covered by the invoice dated September 20, 1923, appears to have been ordered July 31, 1923,

and that covered by the invoice dated August 31, appears to have been purchased August 8, 1923. The merchandise was entered on October 18, 1923.

The board held that the appellant had failed to prove by satisfactory evidence that it was entitled to a remission of the additional duties and denied the petition.

It is claimed by counsel for the appellant that the board erred in its finding of facts and conclusions of law.

In its opinion the court said:

\* \* \* If importers do not care to appeal to reappraisement when the advance is 16 per cent of the invoice price of the merchandise, on account of the work necessary to establish the market value, but feel the additional duty imposed by the statute for undervaluation will be remitted simply for the asking, they are acting wholly at variance with the reappraisement and remission statute. The remission statute was provided to prevent hardship to an importer exercising diligence and good faith in the entry of his merchandise and in ascertaining its market value. \* \* \*

To entitle an importer to remission of additional duties requires the introduction of facts establishing his good faith, and effort to obtain the market price and thereby sustain his invoice. It requires more than the mere statement "I paid such a price;" more than a perfunctory statement "I had not any idea of defrauding the Government." *Such statements are without weight, and have not any probative force.* (Italics ours.)

The pertinent part of section 489 of the Tariff Act of 1922 reads as follows:

Sec. 489. Additional Duties.—If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon a final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. \* \* \*

We are unable to concur in the view that an importer is acting at variance with the letter or spirit of section 489, supra, if he files a petition for remission of additional duties without having first ap-

pealed to reappraisement. He might, upon investigation, conclude that the appraiser had acted correctly in advancing the entered values; or he might be fully convinced that such advances were not warranted by the facts, but be unable, for one reason or another, to prove the correctness of his views. If he appealed to reappraisement under the circumstances first above suggested, might he not be charged with bad faith? Would not an appeal in the latter instance be futile?

If he waives his right to appeal to reappraisement and accedes to the proposition of paying an increase of regular duties, we think that he may rightfully and with perfect propriety, assuming that the equities are with him, file a petition for remission of the additional duties. He may or may not be entitled to remission of such duties, depending upon the record in the case. We agree with the board that the record must contain "more than the mere statement, 'I paid such a price;' more than a perfunctory statement, 'I had not any idea of defrauding the Government.'" But we think such statements are admissible in evidence, are to be considered with the other evidence in the case, and generally speaking may be of some probative force. In some cases testimony of this character might be important. Upon the record in this case, however, we think the trial court was right in holding that the evidence was not sufficient to justify a finding in favor of the appellant.

That the witness visited Germany and purchased the goods after an investigation of the market value of such merchandise is not denied. But he did not testify that he paid the market value therefor. The fact that he made an investigation for the purpose of "posting" himself, is as consistent with the view that he purchased at a price under the market value as it is with the view that he paid the market price. The fact that he entered the merchandise at the price paid for the same is not very helpful under these circumstances. This evidence, together with the statement that, on the date of entry he knew of no higher value at which he should have entered the goods, can hardly be said to be such a full and candid explanation of the facts and circumstances attending the entry of such merchandise at a less value than that returned on final appraisement as would justify a finding that there was in fact no intention to defraud the revenue of the United States or to conceal or misrepresent the facts or to deceive the appraiser. See *The Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220, decided concurrently herewith.

The judgment is *affirmed.*