LINEN THREAD CO. *v.* UNITED STATES (No. 2583) [1]

PETITION UNDER SECTION 489, TARIFF ACT OF 1922, FOR REMISSION OF ADDITIONAL DUTIES—NATURE AND MEASURE OF PROOF.

Section 489, Tariff Act of 1922, makes it incumbent upon a petitioner for remission of additional duties imposed for undervaluation to prove by satisfactory evidence that he had no intention to defraud the revenues or to conceal or misrepresent the facts or to deceive the appraiser as to the dutiable value of the merchandise. Such showing may be made by proof of the circumstances and conditions attending the entry of the merchandise, including direct testimony of the intention of the petitioner. Such direct testimony of intention is of no great probative force, however, unless the circumstances attending the act are of doubtful or double significance. Therefore, while it is error to reject such testimony, it may or may not be prejudicial, depending upon the record of the case in which the question is presented. Each case is to be determined upon the circumstances and conditions peculiar to it supplemented by such evidentiary facts as may be required to fully explain the matters in issue. Proof of the circumstances and conditions, and a full and candid explanation thereof is required. Anything less than that is not sufficient. If such evidence is not offered, even though it may be inconvenient or impossible to do so, the petitioner must suffer the consequences. The evidence in this case is examined and found insufficient.

United States Court of Customs Appeals, November 21, 1925

APPEAL from Board of United States General Appraisers, Abstract 49087

[Affirmed.]

*Sharretts, Coe & Hillis* (*Edward P. Sharretts* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Reuben Wilson*, special attorneys, of counsel), for the United States.

[Oral argument Oct. 27, 1925, by Mr. Sharretts and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers denying appellant's petition for remission of additional duties. The jurisdiction of the board to grant relief in such cases is contained in section 489 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 489. ADDITIONAL DUTIES.—If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the

[1] T. D. 41220.

order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may·prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.  *  *  *

The petition filed by appellant in the court below is as follows:

*  *  *  The petitioners herein allege that the various articles were invoiced at prices actually contracted for; that they had no information from any source whatsoever that such prices did not represent the true *wholesale foreign market value;* that it is their practice before entering to make inquiries relative to the true wholesale market value and that they were not in possession of any definite information in connection with the shipment in question that there had been any change in the *market value* since the date of shipment. That there was never any intention to defraud the revenue·of the United States or to misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. (Italics ours.)

It appears from the record in the case that the imported merchandise was entered for consumption April 15, 1924; that the appraiser notified the appellant that the market value of the merchandise in the country of exportation at the time of shipment was higher than the entered value, whereupon an officer of the appellant, the only witness before the board, in order to ascertain the correct market value of the merchandise as of April 1, the date of exportation, dispatched the following cablegram:  *  *  *

MAY 10TH, 1924.

THREADERS, *Lisburn:*

Cable information for customs entry *market valuation* date of shipment Hilden yarn invoice April thirtieth.

(Italics ours.)                                                      THREADERS.

The appellant received the following cablegram in reply:  *  *  *

LISBURN, *May 12, 1924.*

THREADERS, *New York:*

Hilden yarn invoice thirtieth April following are *market values at that date* thirty-threes 27/6, forty-twos 26/, thirty-fives 27/3, twenty-six one-half 31/, twenty-fives 32/, Hilden invoice *first April* twenty-fives 32/, twenty-nines 29/, bundle all less 90/0, discount.

(Italics ours.)                                                      THREADERS.

The market value stated in the cablegram is identical with the final appraised value and higher than the entered value.

The appellant, having appealed to reappraisement and being unable to prove that the value returned by the appraiser was incorrect, abandoned the appeal and the appraised value was found by the single general appraiser to be the true value of the merchandise.

On the invoice we find the following:

Order No. 12440 accepted 23d October, 1923.

This statement has reference to the particular importation the value of which was incorrectly stated in the entry.

The witness for the importer claimed that the merchandise was ordered January 3, 1924, and that the statement as to the date of purchase contained in the invoice was incorrect. His testimony is in part as follows:

Q. Will you please state to the board just exactly what information you had at the time this entry was made relative to the value of this flax yarn?—A. I had the contract which was placed with *our connections abroad*, who *purchased* the *yarn*.

General Appraiser McCLELLAND. How long before the shipment was the contract made?

WITNESS. The contract was made the 3d of January.

General Appraiser McCLELLAND. When did the shipment come in?

WITNESS. The 1st of April.

General Appraiser McCLELLAND. Did you make any inquiry to see whether the market was the same in April as it was in January?

WITNESS. No; for the reason the contract was for future delivery.

Q. Had you had a prior contract for this yarn, Mr. Day?—A. For this particular shipment?

Q. For this particular class of yarn?—A. Yes; we had a contract in October.

Q. In October, the prior October?—A. Yes.

Q. Was the price higher or lower?—A. The price was higher.

Q. The next contract was in January?—A. January 3, which was lower, both for immediate and for future delivery.

Q. And this January contract, this was a delivery under the January contract?—A. Yes, sir.

Q. How long was it between the time of the contract and the delivery?—A. January 3 is the time of the contract, and delivery April 1.

Q. Is that a usual length of time for delivery to be made under one of these contracts?—A. That was usual.

By General Appraiser McCLELLAND. Do you mean to say this merchandise could not be bought ready for delivery?

WITNESS. No, it could not; it is a special yarn, special size, manufactured for us.

By General Appraiser McCLELLAND:

Q. Isn't there similar merchandise sold in the market?—A. No.

Q. No such yarn as this sold in the market?—A. Not similar.

Q. Not identical to this, because you say it is made special for you?—A. This is a special quality, and a special size; there is no comparison with any other yarn on the market.

\*          \*          \*          \*          \*          \*          \*

Q. What is this document, I am showing you?—A. This is the invoice. This is the order, No. 12440, accepted October 23, 1923, to our connections abroad, and both these contracts are applicable to this order of ours.

\*          \*          \*          \*          \*          \*          \*

The Board of General Appraisers accepted as true the statement contained in the invoice that the merchandise was delivered pursuant to an order accepted by the foreign manufacturer on October 23, 1923, and apparently rejected the testimony of the witness in this regard. They found that the information received by the appellant by cablegram as to the respective market values of the items con-

tained in the invoice and entry *confirmed* the appraiser's findings of value; that no effort was made by the appellant to ascertain the correct value of the merchandise for entry purposes; and that the period of time between the order and delivery of the merchandise was so extended as to put the appellant on inquiry as to foreign values at the time of exportation. Accordingly, they held that the appellant had failed to prove by satisfactory evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise or to defraud the revenue of the United States.

The appellant contends: That the statement in the invoice to the effect that the merchandise was shipped pursuant to an accepted order of October 23, 1923, was shown to be incorrect by the testimony of the witness and that delivery of the merchandise was made pursuant to a contract of January 3, 1924; that the appraisement was made upon the information secured by the appellant by cablegram and furnished by it to the appraiser; that the importation was a special type of yarn made specially for the appellant and was not sold in the market; that the court below erred in refusing to permit the witness, who was responsible for the statement of values made in the entry, to testify directly that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise or to defraud the revenue of the United States; and that the board's findings of fact are in direct conflict with the evidence.

Prior to the enactment of the tariff act of 1922, additional duties assessed against merchandise could not be remitted nor payment thereof avoided except in cases arising from a manifest clerical error. However, section 489, supra, provides that such additional duties shall be remitted "upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence" under proper and reasonable rules prescribed by the board, "that the entry of the merchandise at a less value than that returned upon final appraisement was without any *intention* to *defraud* the *revenue* of the United States or to *conceal* or *misrepresent* the *facts* of the *case* or to *deceive* the *appraiser* as to the value of the merchandise." (Italics ours.)

The statute makes it incumbent upon the petitioner to prove by satisfactory evidence that he had no intention to defraud the revenues or to conceal or misrepresent the facts or to deceive the appraiser as to the dutiable value of the merchandise. He is required to prove a negative, but the proof of such negative is essential to his

right to have a finding in his favor, and the burden of proof is upon him to establish such facts by satisfactory evidence. 22 Corpus Juris, 80, 81, and cases cited. Such facts may be proved by the circumstances and conditions attending the entry of the merchandise at a value less than that returned upon final appraisement, including direct testimony of the intention of the petitioner. Such direct testimony of intention is of no great probative force, however, unless the circumstances attending the act are of doubtful or double significance. 10 R. C. L. 116. Therefore, while it is error to reject such testimony, it may or may not be prejudicial, depending upon the record in the case in which the question is presented. In this case no exception was taken to the ruling of the court rejecting such testimony.

Each case must be determined upon the circumstances and conditions peculiar to it, supplemented by such evidentiary facts as may be required to fully explain the matters in issue. There ought to be no great difficulty in proving that there was no intention to defraud or deceive in the entry of imported merchandise, if in fact there was no such intention. Proof of the circumstances and conditions, and a full and candid explanation thereof is required. Anything less than that is not sufficient. If such evidence is not offered, even though it may be inconvenient or impossible to do so, the petitioner must suffer the consequences.

The record is a peculiar one. An attempt was made to impeach the statement in the invoice as to the date of the order for the merchandise. The witness testified positively that such statement was incorrect and that the order was given on January 3, 1924, and not on October 23, 1923. The contract or order was not offered in evidence, nor was there anything offered to support or substantiate this testimony. It will be noted that the invoice covers merchandise other than that involved in this case, and that the several dates on which the various orders for such merchandise were accepted were stated in the invoice with apparent care. It is possible that the witness was correct and the statement contained in the invoice was wrong. However, the board found to the contrary and we think its finding was justified by the evidence. The witness also stated positively that the merchandise was made specially for the appellant, and was not bought and sold in the market. Nevertheless, he requested information by cable as to the *market value* of the merchandise, and received a reply stating that the *market value* on the date of exportation was identical with that returned by the appraiser. Moreover, the petition filed in the case must be considered as asserting that the merchandise had a foreign value.

It is contended by the appellant that it was upon the information secured and furnished by it that the final appraised value was based, but we are unable to find any evidence to that effect; furthermore, the board found that the information contained in the cablegram from abroad *confirmed the advances* of the appraiser. There is no evidence upon which a finding to the contrary could be supported.

The Board of General Appraisers denied the petition, not, as we understand it, because there was any evidence of fraud, but because the appellant had failed to prove its case by satisfactory evidence. We think the finding is correct and the judgment is *affirmed*.