FENTON CO. (INC.) *v.* UNITED STATES (No. 2872)[1]

United States Court of Customs Appeals, April 16, 1927

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellant. *Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter* and *James R. Ryan,* special attorneys, of counsel), for the United States.

[Oral argument March 15, 1927, by Mr. Barnes and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This is a petition for remission of additional duties, under section 489 of the Tariff Act of 1922. The facts are substantially as follows: Louis Harris was engaged in the business of importing diamonds from Vienna, Austria. It was the custom of the importer to send a certain sum of money to his brother in Austria, who would thereupon

[1] T. D. 42153.

purchase diamonds for him to that amount and then export the same to him, with an invoice showing their value as established by the purchase price. In making these invoices it was the custom of the brother to invoice the diamonds in bulk at a certain price per carat, not indicating in the invoice how many or what kind or size of diamonds constituted the shipment. Five such importations had been received by the importer prior to the one in question, all of which had been entered as invoiced and passed as correct. On the last preceding importation, however, the appraiser at the port of Cleveland, where such goods were entered, called the importer and his broker to her office and explained to them that such method of invoicing was improper, that in future shipments the diamonds must be separately invoiced, and that he should write his brother to that effect. The importer did so, but it is claimed by him that his brother had invoiced and exported the shipment in question before receipt of such letter. This particular importation was by mail, and accompanying the package was an invoice which described the goods as 13.88 carats of cut diamonds of a value of $1,318.60, excluding nondutiable charges. The importer then delivered the invoice to the broker who had been present upon the occasion of his previous talk with the appraiser above referred to, and told him to enter the goods as invoiced, which was done. Thereupon the package was opened and examined by the appraiser and the diamonds separately appraised. As a result of the appraisement the diamonds were found to be of the value of $2,104.20, or an increase of approximately 37 per cent. The importer appealed to reappraisement, but abandoned this appeal. He thereupon brought this proceeding under said section 489. The court below denied the prayer of the petition, and from the resulting judgment the importer has appealed.

The importer was bound to exercise the utmost good faith, to make a full and candid disclosure of all facts within his knowledge, and to do nothing which would cause a prudent and careful person to question the correctness of the values given by him. *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301; *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589; *Stone & Downer Co.* v. *United States*, 13 Ct. Cust. Appls. 649. Especially if, before the time of entry, he had been warned that he must not make further entries in this manner, as the record shows he was, it is hard to understand upon what theory he may absolve himself from the implication that what he did was, in effect, a fraud upon the customs. Not only was he cognizant of the impropriety of such an entry, but his broker, also, is shown to have had full knowledge of the same facts.

But the importer insists that he could not know the contents of the package imported because no provision is made by law by which the importer can open and examine a mail importation; that not

having knowledge of the contents of the package, he could do nothing but enter it as invoiced. Knowing, as he did, that the invoice received by him was not in compliance with the requirements of the law, it devolved upon the importer and his broker to delay such entry, if possible, until complete information might be procured by which such goods might be properly entered. The statutes and Customs Regulations secured to him ample opportunity so to do. Section 490 of said tariff act provides that "whenever the collector believes that any merchandise is not correctly and legally invoiced" the goods shall be sent to general order until proper entry may be made. No reason is apparent why such a course might not have been pursued, and it is quite obvious such would have been the procedure had the importer acquainted the collector with the exact situation at the time of entry. Again, section 498 of said act provides that the Secretary of the Treasury may prescribe rules and regulations for the entry of: "(10) Merchandise when in the opinion of the Secretary of the Treasury the value thereof can not be declared." Under this provision of law the said Secretary promulgated article 315, Customs Regulations of 1923, as follows:

ART. 315. *Procedure.*—The following classes of merchandise may be entered by appraisement on Customs Form 7500 without requiring a consular invoice or a bond for its production:

\* \* \* \* \* \* \*

Other merchandise may be entered by appraisement only upon application to the Secretary of the Treasury based upon the fact that the consignee is unable to declare a value for the purpose of making formal entry. The consignee shall furnish any bills or statements of cost in his possession and declare under oath that he has no other information as to the value of the merchandise.

The entry will be forwarded to the appraiser and the packages sent to the appraiser's stores. The appraiser will report the result of his appraisement on the entry and duties will be assessed in accordance therewith, but the importer may substitute an entry for warehouse at any time within one year from the date of importation.

The cartage, storage, and labor incident to the entry by appraisement of articles or merchandise will be borne by the importer.

Under these provisions of law the importer might have made application for the entry of his goods by appraisement, but this was not done. While the importer may have been not fully conversant with the law, his broker, a person skilled at the business of entering imported goods, can not be said to have been so. Having disregarded the letter of the law and the advice of responsible customs officials, and in doing so, having grossly undervalued his goods, the importer is in no position to complain against the imposition of the additional duties imposed upon him.

The judgment of the court below is *affirmed.*