R. W. GRESHAM *v.* UNITED STATES (No. 4214)[1]

---
[1] C. A. D. 70.

United States Court of Customs and Patent Appeals, October 30, 1939

*Edwin D. Howald* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[Oral argument October 2, 1939, by Mr. Howald and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

On February 6, 1937, petitioner Gresham, a customs broker, representing the Ferro Enamel Corporation of Cleveland, Ohio, entered at the port of Cleveland, Ohio, certain enamel frit which had been shipped by the Ferro Enamel Co. of Canada, Ltd., a subsidiary of said Cleveland corporation.

Under circumstances presently related, the merchandise was entered at the invoice prices which were the prices charged by the Canadian company to its parent corporation in Cleveland. The appraiser increased the value of the different items of the invoice in an amount ranging from 47 per centum to 73 per centum. There was no appeal for reappraisement. Additional duties were levied by the collector by reason of the said undervaluation, and appellant, still acting for the Ferro Enamel Corporation of Cleveland, filed with the United States Customs Court, under the authority of section 489 of the Tariff Act of 1930, a petition alleging that said entry was made without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise, and asking that the collector be directed to reliquidate the entry without the imposition of additional duties.

The First Division of the United States Customs Court held that the evidence introduced at the hearing was not satisfactory, denied the petition, and from the judgment rendered in connection therewith the petitioner-appellant has appealed here.

The assignments of error, with one exception, are in the usual form and challenge the correctness of the finding of the trial court

upon the evidence adduced. Assignment of error No. 4 challenges the correctness of the judgment on the ground that it was without a finding as to whether there was or was not an intent to defraud or to deceive the appraiser or to misrepresent or to conceal the facts.

The pertinent portion of section 489, *supra*, reads as follows:

SEC. 489. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

It will be observed that the statute requires the assessment and payment of duty except in—

the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed * * * and supported by satisfactory evidence * * * that the entry of the merchandise at a less value that returned upon final appraisement was without any intention to defraud [etc.].

The petitioner asks in his petition that the collector be directed to liquidate without the imposition of the additional duties, and while the petition contains no prayer for a finding by the trial court that there was an absence of fraud, there was no question raised as to the petition being sufficient to invoke the jurisdiction of the court to grant such relief as said section of the statute authorized.

Under the circumstances, we must regard the petition as being sufficient, and also we think the judgment of the court, based upon its decision, sufficiently answers the requirements of the statute, even though it contains no express finding as to the absence or existence of fraud. There was a finding to the effect that appellant's proof was not such as to entitle him to be relieved of additional duties. We think a finding is implied that appellant had not satisfactorily proved to the court the absence of fraud as the statute requires. *International Graphite & Electrode Corp.* v. *United States*, 27 C. C. P. A. (Customs) 36, C. A. D., 58.

The facts adduced at the trial by the evidence of the petitioner (no evidence having been introduced by the Government) are briefly as follows:

The employees of the Ferro Enamel Corporation of Cleveland were on strike and it was necessary to import from the subsidiary Canadian plant the enamel frit from which enamelware was made. When it had been determined that the Canadian goods were to be imported, the question of their proper dutiable value was taken up with petitioner

Gresham, who was a Cleveland customs broker, by a Mr. Mavor (he did not testify), who was connected with the Canadian plant. Mr. Gresham testified that in reply to the inquiry as to what value should be stated in the invoice, he told Mr. Mavor that he should make out the invoices based upon the foreign wholesale market value and that he (Gresham) "explained to him just what was meant by that in the terms of the Tariff" and that Mr. Mavor told him he was going to telephone to the Ottawa plant and give them the instructions furnished by Mr. Gresham.

James G. Henry, vice president of the Ferro Enamel Corporation of Cleveland testified that the involved shipment was the first and only one between the parties and that the invoiced amount was the amount actually paid the Canadian plant for the merchandise and that in his connection with the matter he had no intention to defraud the revenue or to conceal any facts or deceive the appraiser. He was asked the following question:

X Q. So that when you purchased this from the Canadian Company it was merely a bookkeeping purchase, was it not?

He replied:

A. In a way, yes, but all of our business transactions are kept separate, and the billing and payments are made just as if it was an outside company.

He stated that he was at that time familiar with the operations of the Canadian plant and knew the general prices of the merchandise sold to the trade in Canada although he said there were "different prices and different customers" but did not, at the time, know the "Canadian foreign-market value." He also testified that the Cleveland concern did not approve all sales made by the Canadian company.

Edward A. McDonald, on behalf of the petitioner, testified he was assistant manager of the Canadian company and that he invoiced the goods in question; that Mr. Mavor (previously mentioned herein) happened to be in Cleveland at the time and "phoned" the order to him and told him to invoice it at the "regular wholesale price that we charge all of our agencies." He stated that this was done and that he "had no idea that the fair market value, the prices in Canada, had any connection with the prices here"; that they had one scale of prices for their subsidiaries and another price to all consumers. He stated that when Mr. Mavor spoke to him about the usual wholesale prices he understood him to mean the price charged the subsidiaries; that he had had no previous experience in invoicing this character of goods except a few small sample shipments and that in his connection with the transaction he had no intention of defrauding the revenue or of deceiving the United States officials.

No other testimony material to the issue was introduced.

The trial court in deciding the case said:

It is quite apparent from the statements of the witnesses that the shipping company of the involved merchandise from Canada not only bore a similar name to that of the importing company, but that in fact they were one and the same and manufactured the same products. It appears that because of a strike in the American plant it became necessary to import the involved material in order to fill domestic orders, and that the transaction between the two, instead of being an actual sale, was nothing more than a matter of bookkeeping. The involved merchandise was invoiced and entered at prices ordinarily charged by the parent company to its agencies, in spite of the fact that the officer of the petitioner who directed the making of the entry knew generally the market prices in Canada were higher and could easily, because of the interrelationship between the shipping and importing companies, have ascertained the correct market prices on the date of exportation.

Section 489 of the Tariff Act of 1930, under which these additional duties sought to be remitted accrue, provides that a petition for remission of such additional duties must be supported by satisfactory evidence. That has not been done in this instance. Responsible officers of the importing company knew that the market prices were higher than the prices charged to the agencies of the company, and were put upon inquiry as to such values. Having failed to make such inquiry the petitioner may not be relieved of additional duties accruing by reason of the resulting undervaluation. See *Lowe Co.* v. *United States*, 15 Ct. Cust. Appls. 418, T. D. 42590, and cases cited therein.

The petition is therefore denied. Judgment will issue accordingly.

We are in agreement with the decision of the trial court and as we understand it, it is a finding to the effect that the proof adduced by the petitioner was not satisfactory to warrant its exercise of the powers authorized under the section of the statute involved and therefore amounts to a denial of a petition for a finding to the effect that the entry was made without the intent to defraud, etc., as prescribed by statute.

It is true that the representative of the shipper of the merchandise consulted a broker as to the proper dutiable value of the same. He was told that he should invoice it on the basis of the foreign wholesale market value. He did not testify in the case nor is there any explanation as to why he did not do so. There is no evidence, therefore, that he did not know the meaning of the instructions given by the broker or that he made any inquiry as to which of the two selling prices might be regarded as the foreign wholesale market value.

Mr. Henry's testimony does not support the petition inasmuch as it definitely shows that he was familiar with the business of the two plants; knew that they had two sales prices and that in a sense the charge made by the subsidiary company to the parent company was a matter of bookkeeping. It would seem that one familiar with transactions between a domestic and a foreign concern as was Mr. Henry would understand that such a price would not truly reflect a proper dutiable value. At any rate, assuming that the parties responsible for making the entry did not know the true foreign market value it

does not seem that it would have been a difficult matter to have ascertained it.

It is not enough in a case of this character for a petitioner, under circumstances like those at bar, to disclose a lack of knowledge of the true value of the merchandise in order to meet his burden and make satisfactory proof in the proceeding authorized by the statute involved. *Lowe Co.* v. *United States,* 15 Ct. Cust. Appls. 418, T. D. 42590. We have said that one law cannot be made for the ignorant and another for those who are versed in the law. *Schrikker* v. *United States,* 13 Ct. Cust. Appls. 562; T. D. 41433, in which *Barlow* v. *United States,* 7 Pet. 404, is cited. Moreover, it is clear that Congress by the enactment of said section 489 and its predecessor did not intend to suggest that there was a changed attitude toward the wholesome effect of the additional duty provision in protecting the revenues, nor did it intend to provide an easy means for the circumvention of the statute. *Finsilver, Still & Moss* v. *United States,* 13 Ct. Cust. Appls. 332, T. D. 41250.

It has frequently been pointed out that the entrant of merchandise owes a duty to inform himself as to the correctness of his representations as to the value of his merchandise and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute.

In *Wolf & Co.* v. *United States,* 13 Ct. Cust. Appls. 589, T. D. 41453, we said:

* * * [citing cases] Summarized, these adjudged cases announce certain fundamental facts which the petitioner must establish if he is to obtain relief: First, He must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

In the *Finsilver* case, *supra,* it was said:

* * * In remission cases the importer is not the insurer of the correctness of the value of his goods, neither is he held to the strict rule that he must positively know their value, but he certainly can not be said to be acting in good faith if he declares an incorrect value for his goods, to be acted upon by the appraiser, when, by reasonable inquiry, he could have been advised that his statement was false. And by reasonable inquiry we do not mean that in every instance the importer is required to make inquiries before declaring what he believes to be the value of his goods, but if there is any circumstance which would put a reasonably prudent person, under similar circumstances, upon inquiry, then it is his duty to make such inquiry. The importers, in this instance, may have had no knowledge that their importation was worth more on the date of shipment than it was on the date of purchase, but they represented that they *did* know its value. We think there were circumstances calculated to put them upon their inquiry, and that reasonable

inquiry would have developed the inaccuracy of the stated value. Under these circumstances the importers have not supported the allegations of their petition by satisfactory evidence that the entry of the merchandise at a less value on the date of shipment than that returned upon final appraisement was without any intent to defraud the revenue, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

See also *Hauptman* v. *United States*, 13 Ct. Cust. Appls. 295, T. D. 41218 and *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220.

It must be borne in mind that a failure to find the absence of fraud by the trial court is not necessarily equivalent to a finding that there was fraud. But, a finding such as the trial court made in the case at bar obviously implies only that regardless of whether there was or was not fraud, the petitioner has not submitted satisfactory proof which shows the absence of fraud, etc., and that the mere statement on the part of the witnesses that they did not intend to defraud, etc., while competent evidence, is insufficient unless supported by other satisfactory evidence. *Finsilver, Still & Moss* v. *United States, supra.*

We think the trial court arrived at the right conclusion and that it properly denied appellant's petition, and its judgment so doing is affirmed.