- (C. D. 1692)

KENNETH KITTLESON
E. W. ROLLOW } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 6, 1955)

*John W. Bull* for the petitioners.

*Warren E. Burger*, Assistant Attorney General (*William J. Vitale* and *Daniel I. Auster*, trial attorneys), for the respondent.

Before Lawrence, Rao, and Ford, Judges; Rao, J., dissenting

Lawrence, Judge:  By the timely filing of this petition, it is sought to have remitted the additional duties assessed on an importation from Cuba of 2,326 cartons of hard sugar candy, the final appraised value having exceeded the value declared on entry.

At the hearing of this petition in Tampa, Fla., Kenneth Kittleson appeared on behalf of the petitioners and Ernest R. Kirkland and Edwin O. Tryon testified for the respondent.

Kittleson, one of the petitioners herein, stated that, as a duly licensed customs broker, he handled the importation in issue for account of E. W. Rollow and Bill Rollow, copartners in the firm of E. W. Rollow & Co.  The importation consisted of hard sugar candy purchased from and shipped by the Industrias Alimenticias Co. of Havana, Cuba.  The merchandise was entered at the invoice price, 11.25 cents per pound, f. o. b. Havana, and was finally appraised at 17.5 cents per pound, f. o. b. Havana.  Prior to entry, Kittleson made inquiry of the ultimate consignee as to the purchase price of the merchandise.  He testified that he sought information verbally from the appraiser of merchandise at the port of entry and admitted that he had not filed a written submission sheet, stating that he had been advised by the appraiser that it was not necessary to file requests for information on every shipment as long as the merchandise was identical, was for the same importer, and there was no change in the invoice price.  It would be only where there was a change that it would be necessary to file the usual submission form.  Kittleson testified that, regardless of this established practice, he "did call the appraiser on the telephone, or maybe went down to his office.  I don't recall."  He added that he had made a written request on the first shipment of this type of commodity to this importer, but thereafter the requests were not in writing.  It was his regular practice to either call the appraiser on the telephone or submit the usual written request for information.

The appraiser's office being without any information of a change in value at that time, and inasmuch as Kittleson was unable to obtain from the exporting company any information pertaining to

value for the reason that that company was in the process of liquidation, he relied upon the invoice and purchase price of 11.25 cents per pound, f. o. b. Havana, because that was the same price at which he, as customs broker, had handled previous importations of the same material from the same company during the course of the same year. In support of that statement, there were admitted in evidence as petitioners' collective exhibits 1, 2, and 3, photostatic copies of consumption entries and invoices of merchandise covering importations from Industrias Alimenticias to the Rollow company on February 21, April 24, and October 1, 1946. Said importations were all appraised at the entered values. Kittleson added that he had also handled several shipments of the same commodity for different manufacturers and that at the time he made entry of the merchandise in issue the market in Havana was stable.

Kittleson further stated, with regard to the present importation, that he had no information from any source whatsoever that the price at which he entered the merchandise did not represent the true wholesale foreign market value at the time of shipment, which was October 24, 1946.

The witness testified that in previous importations where there had been an advance in value the appraiser had so notified him by letter advising that the entry could be amended within a certain period of time but that in the present instance, although appraisement at a higher value was not made until 2 years after entry, he did not receive such a notice. Kittleson stated that, as an experienced customs broker, he was aware of his right to amend the entry before appraisal, but he did not do so in this case because he had no reason to believe that the entered value was in error.

On cross-examination, Kittleson testified that at the time of importation of the merchandise covered by exhibits 1, 2, and 3, as well as the present entry, OPA prices prevailed on candy in the United States. At that time, due to the rationing of sugar, candy was in great demand in the United States and it was difficult to obtain. When asked whether he could fix with a reasonable degree of certainty the time when he spoke to the appraiser concerning the market values, he replied "within a few days before entry." He added that, because 8 years had transpired between the date of entry and the time of his testimony, he did not recall whether his telephone inquiry as to value was directed to the appraiser personally or to some other customs official, but he "definitely made the inquiry. I know that."

Ernest R. Kirkland, appraiser of merchandise at the port of Tampa, when called to testify on behalf of the respondent, stated that only he and Mr. Tryon, examiner, were authorized to give information as to value to any importer or prospective importer. He

added that he knew that Kittleson had not called him for information concerning value of the present importation. He further stated that it was the practice in his office, in instances where value was to be advanced and the broker or importer had complied with all the regulations, to notify him there would be an advance in value and allow a certain length of time within which the entries might be amended. Kirkland stated, however, that this was not done in the present case because the broker had not complied with the regulations with regard to trying to ascertain values from his office, adding "He had intermittently filed what we call 'submits' prior to this, as he did on certain other entries after this. But in this instance he did not."

As respondent's second witness, Edwin O. Tryon, customs examiner at the port of Tampa, testified that Kittleson did not seek information from him concerning the value of the subject merchandise at the time of making the particular entry, although, in connection with other importations, he had occasionally filed a written submission sheet.

When asked why the importer in this instance had not been extended the courtesy of amending the entry, he replied that it was because a subsequent entry, and the only one of which he had a record, filed at the Tampa office on November 14, 1946, showed a higher unit price. He added that said subsequent importation covered identical merchandise and that when the importer's broker, Kittleson, learned that there was a higher price he amended his entry from the entered value of 11.12 cents per pound to 20 cents per pound, and the merchandise was appraised at 20 cents per pound, net packed. Tryon believed that that was sufficient notice to petitioners that the value of the present importation had changed.

On cross-examination, Tryon stated that he had no recollection of Kittleson's telephoning him about information with reference to the shipment involved herein.

Inasmuch as the instant shipment was appraised at 17.5 cents per pound, it would appear that the market after an extended period of stability began to show a marked upward trend.

It was brought out at the trial that the subject merchandise was purchased on August 27, 1946, exported from Cuba on October 24, 1946, and entry was made on October 30, 1946. The subsequent shipment referred to by witness Tryon was likewise purchased on August 27, 1946, exported November 6, 1946, and consumption entry filed November 14 of that year.

At the conclusion of the hearing, petitioners' counsel requested time to move for a commission to take the deposition of E. W. Rollow, who joined in this petition, and who, by virtue of his advanced age and physical condition, could not appear in person. This request was granted. Subsequently, the right to issuance of a commission

for this purpose was waived, and the case was submitted by the parties on the record as made.

As was stated in the case of *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220, in determining whether additional duties accruing by virtue of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489) will be remitted—

Each case must be determined upon the circumstances and conditions peculiar to it, supplemented by such evidentiary facts as may be required to fully explain the matters in issue. There ought to be no great difficulty in proving that there was no intention to defraud or deceive in the entry of imported merchandise, if in fact there was no such intention. Proof of the circumstances and conditions, and a full and candid explanation thereof is required. Anything less than that is not sufficient. If such evidence is not offered, even though it may be inconvenient or impossible to do so, the petitioner must suffer the consequences.

See also *Grebstein* v. *United States*, 15 Ct. Cust. Appls. 285, T. D. 42470.

We are of the opinion that the circumstances surrounding the entry of the importation in issue and the peculiar conditions under which it was made have been fully and candidly explained. We learn from the record that information from the supplier as to current market value was unavailable, due to the fact that the supplier was in the process of liquidation. It is the testimony of petitioners' witness that he sought information orally from the office of the appraiser at the port of entry, in accordance with his usual practice, and he was informed that there was no information to give him at the time.

Petitioners' witness Kittleson, as an experienced customs broker, evidently was aware that the inability of the appraiser of merchandise to supply information of current value of the importation in controversy did not relieve the entrant of further inquiry. As was stated in the case of *United States* v. *Edward H. Corrigan*, 38 C. C. P. A. (Customs) 26, C. A. D. 434—

* * * Where a submission sheet has been returned to an importer with no information, that fact is sufficient to put a customhouse broker on notice so as to require that he seek further information as to value before making entry. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306.

It is to be gathered from the testimony of Kittleson that such awareness of his duty guided his action in making entry of the instant merchandise. He made inquiry of the importer as to the current market value of such or similar merchandise, but no additional information was forthcoming from this source. In entering the merchandise, it is apparent that the customs broker made full disclosure of all information in his possession. It appears, therefore, to be the act of a reasonably prudent businessman, in the absence of any other information from the supplier, the actual importer, or the appraiser's office, to rely on previous importations of the same merchandise from

the same supplier, which, through the course of the year, had remained stable in price, as evidenced by petitioners' exhibits 1, 2, and 3.

The fact that 2 weeks subsequent to the present importation another importation of the same merchandise from the same supplier for the same importer was entered at a higher price, according to the record before us, was apparently related to the lifting of OPA regulations on candy from Cuba (Office of Price Administration Supplementary Order No. 193, effective November 10, 1946, contained in Federal Register, November 14, 1946, page 13464).

Failure of Kittleson to remember whether it was Kirkland, Tryon, or some other person he had communicated with by telephone prior to entry is understandable when notice is taken of the fact that 8 years transpired between the date of importation and of trial, reappraisement proceedings having intervened in the meantime. It is worthy of note, as well, that it took the appraiser's office 2 years to complete its foreign investigation in order to ascertain the correct value.

Further, the fact that E. W. Rollow did not appear at the hearing or have his testimony taken by deposition does not militate against petitioners' case, since Rollow's deposition would have been repetitious of the information contained in the petition itself, which was signed jointly by Kittleson and Rollow.

It can scarcely be believed that the entrant would deliberately attempt to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the proper value of the merchandise, at the risk of the imposition of such a substantial amount of increased and additional duties as was imposed in this case.

The fact that this merchandise was not appraised until almost 2 years after entry, during which time petitioners herein did not amend their entry, although they could have done so had they felt the entered values were not correct, is quite convincing that petitioners honestly believed that they had entered the merchandise at the correct value. This is particularly true when it is remembered that the price of this merchandise had remained constant for the 12-month period preceding the date of entry and that every effort required of a prudent businessman had been exerted to ascertain if there was a value for this merchandise on the date of exportation other than the value at which entry had been made.

The following quotation from the case of *Syndicate Trading Co.* v. *United States*, 13 Ct. Cust. Appls. 409, T. D. 41339, is particularly apropos to the facts of this case, as detailed by petitioners herein:

We have recently in effect held, in cases of this character, that if the importer exercises what is, under the circumstances of the case, absolute good faith in making his entry, and fully and candidly discloses all the material facts bearing

upon the value of the merchandise, he is entitled to a remission of additional duties. *Hauptman* v. *United States*, 13 Ct. Cust. Appls. 295; T. D. 41218; *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301; T. D. 41220; *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273; T. D. 41212.

Upon the entire record, and in view of the circumstances surrounding the case, we are of the opinion that petitioners have shown affirmatively that entry of the merchandise in controversy was made without intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to its value. The petition is, therefore, granted.

Judgment will be entered accordingly.

DISSENTING OPINION

RAO, Judge: I am inclined to the view that the instant record does not contain satisfactory evidence to support the allegations of this petition. It does not appear that petitioners were sufficiently alert to the obligation of entering their merchandise at its true and correct value to warrant the application of the remedial provisions of the remission statute.

There may not have been any circumstances known to petitioners *at the time of entry* calculated to put a reasonably prudent businessman on notice that the entered values were too low. It may even be supposed that at the time of entry petitioners had reasonable grounds for believing that the market in Cuba for hard sugar candy was stable and that the invoice prices of the instant importation, which were the same as the entered and appraised values of prior shipments, represented the true value of the merchandise at bar.

Were there nothing more in the record before us, I should agree with the majority that this petition should be granted. But that is not the case, as the evidence reveals facts *surrounding* the entry which I regard as sufficient to impose upon petitioners the burden of making further inquiry as to the correctness of the entered values.

It is the uncontroverted fact that within a short time after entry petitioners voluntarily amended upward to 20 cents an importation of the same merchandise, from the same manufacturer, which had been entered at a value of 11.12 cents. It appears that the order for the merchandise covered by the subsequent entry was accepted on the same day, to wit, August 27, 1946, as the entry here in question, and that exportation occurred within a 2-week period. This was sufficiently close in point of time to charge petitioners with notice of a change in value which might affect the entry in this case and to require further inquiry with respect thereto. Petitioners were not entitled to await notice from the appraiser that the entered values should be amended before taking any independent action. They were possessed

of information which was calculated to create a doubt, and should, at the very least, have made further investigation.

It does not appear that they did. On the contrary, it is inferable from the testimony of the broker Kittleson, to the effect that he did not make any effort to amend the entry because he was satisfied with the value, that nothing else was done.

It is my opinion that the failure to amend the entry under the circumstances of this case casts a shadow over the *bona fides* of petitioners which has not been dispelled. As was stated in the case of *United States* v.. *Pennsylvania Salt Manufacturing Co.*, 26 C. C. P. A. (Customs) 232, C. A. D. 22:

It is, of course, true that the issue must be determined upon the question of intent at the time of entry, but, for the purpose of throwing light upon the matter of intent, the conduct of the petitioner in direct relation to the subject matter, before and subsequent to the entry, may be looked to. We have already recited the substance of what occurred before the entry and made allusion to the fact that no investigation as to dutiable value was made after entry, not even after the receipt of the second invoice, while the whole matter of appraisement was still open and the entry could have been amended. * * *

I do not regard as material herein the lifting of controls by the Office of Price Administration on November 10, 1946, for the reason that both of these shipments were exported from Cuba prior to said date. Inasmuch as these entries were appraised on the basis of export value, which the statute defines in part as "the market value or the price, at the time of exportation of such merchandise to the United States," [1] events occurring subsequent to the time of exportation are without relevance.

I am not satisfied by the record in this case that petitioners have discharged their duty to enter the merchandise at its proper value. *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487. Accordingly, I am of opinion that this petition should be denied.

(C. D. 1693)

---

[1] Section 402 (d), Tariff Act of 1930.