BEFORE THE THIRD DIVISION, JUNE 5, 1956

**No. 60001.**—Sears, Roebuck and Co. *v.* United States, petition 7002–R (Boston).

EKWALL, Judge:  This action seeks remission of additional duty assessed pursuant to the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489) on an importation of willow clothesbaskets in three sizes, imported from Belgium and entered at the port of Boston, Mass., on January 14, 1952.  Said additional duties were assessed due to the fact that entry was made at values less than those found by the appraiser on final appraisement.

Petitioner introduced the testimony of two witnesses in support of the petition.

Mr. Arthur A. Sibbald, the first witness, described himself as the import manager of the petitioner.  His testimony was substantially as follows: Clearance and entry of merchandise through customs throughout the entire United States is made through his office.  He issues instructions as to how entry is to be made to customhouse brokers, employed by petitioner in practically every port of the United States.  Petitioner has stores throughout the United States and makes importations at various ports, practically every principal port of the country.  Petitioner's buyers are located in Chicago and are known as parent buyers, who have the final say as to buying merchandise.  Price lists, samples, etc., are sent in from petitioner's foreign offices throughout the world for the buyers to make decisions as to purchase.  All orders are cleared through the witness' office.  In the event of a change in price, his office should receive copies of the letters to the

buyers from the petitioner's foreign representatives. It is the established policy of the company that his office must receive copies of letters between the buyers concerning any changes in price. When such information is received by his office, it is passed on to petitioner's customhouse brokers at the various ports, who, in turn, notify the customs examiners. Willow baskets, such as those here involved, were entered at Boston, Seattle, and Los Angeles.

After the merchandise herein had been received, the witness discovered that the prices were different from those at which petitioner had previously entered the baskets. Upon discovering the change in the prices, the witness communicated with a Mr. Selfridge, petitioner's buyer in Belgium, who had arranged for the purchase of the baskets, in order to ascertain the reason for the advances in price. He first received notice of this increase in prices sometime within a week prior to January 21, 1952. (The instant merchandise was entered, as above stated, on January 14, 1952.) It was not until the latter part of February 1952 that he found in the buyer's files a letter, dated October 24, 1951, addressed to Mr. Smagac, the parent buyer, from Mr. Selfridge, the buyer in Belgium, advising of new prices. This letter was received as exhibit 3. It failed to show that a copy had been sent to the witness; in fact, the witness testified that it plainly indicated that such copy had not been sent.

At this point in the testimony, the petitioner introduced into evidence, as exhibit 4, a copy of interhouse correspondence, dated October 29, 1951, in which the witness was advised of a raise in price. This letter states that attached thereto is a letter giving the new prices. The witness testified that he did not at that time receive the letter giving the new prices; that it was not attached to said exhibit 4. Subsequently, he endeavored to ascertain the new prices and received a letter, dated November 15, 1951, from the manufacturer (exhibit 5), giving the prices f. o. b. Antwerp and f. o. b. factory.

Petitioner's counsel stated to the court that, due to the confusion occasioned by the different prices prevailing on November 15, 1951, as shown by exhibit 5, and a later letter, dated March 12, 1952, giving another price as of November 15, petitioner requested that entries of this merchandise be held up and "everyone was caught until this was straightened out."

The witness testified that exhibit 5 gave a price of $8.40 per dozen for size 1 as of November 15. Entry was made at that price. A letter of March 12, 1952 (exhibit 6), from the same shipper, gave a price for that size on that date of $8.93. So, petitioner had two prices, $8.40 and $8.93, for size 1 as of November 15. Due to this confusion, petitioner instructed its customhouse brokers to request the examiners to withhold their appraisements until a further investigation might be had and, in addition, notified its customs attorneys to communicate with the various examiners. Thereafter, petitioner instructed its customhouse brokers to amend the entries and that was accomplished at most of the ports. As to the Boston entry, the one here involved, an attempt was made to amend that entry, but the customhouse broker was not permitted to make amendment of that entry.

Petitioner also introduced into evidence, as exhibit 10, a letter addressed to the appraiser at Boston, under date of March 31, 1953, stating, among other things, that petitioner's counsel was endeavoring to obtain information as to whether any orders had been placed for these baskets subsequent to October 24, 1951.

The witness further testified that he did not intend to defraud the revenue, deceive the appraiser, or misrepresent the facts to said appraiser.

On cross-examination, this witness testified that the first time he saw exhibit 3, advising of a rise in prices, was in January 1952, although it had been received

by the parent buyer probably about 6 days after its date, which was October 24, 1951. The parent buyer had been advised, therefore, that the future prices for sizes 1, 2, and 3 were to be increased, but the importing department was not informed. On cross-examination, this witness testified that he had no personal recollection as to whether he had seen the letter of September 14, 1951, referred to in said exhibit 3, but, in the ordinary course of events, he eventually would have received it. Prior to December 1951 or January 1952, he had no knowledge of an increase in the prices for sizes 1, 2, and 3. He first became aware of the letter, exhibit 3, in January 1952.

Petitioner introduced the testimony also of Mrs. Ella C. Fifield, the vice president of the firm of customhouse brokers for the petitioner, who prepared the entry in this case, under instructions from the petitioner. She testified that, after the entry was prepared (she thought it was in March 1953), she inquired from the appraiser's office as to the possible amendment of the entry, but was informed that the entry could not be amended because appraisement had not been completed. This refusal to allow amendment was received after the witness had received a letter from the petitioner giving new prices and asking the broker to make the amendment. The witness notified the petitioner of said refusal to allow amendment.

On cross-examination, this witness admitted that, as a licensed customhouse broker, she was familiar with the statute permitting amendment to entries; that, although technically amendments are filed with the collector, her firm generally works through the customs examiners in making amendments. She admitted that she could file an amendment with the collector, irrespective of any reference to the examiner or the appraiser's office, but stated that, in order to do so, it would be necessary to have the invoice and, in this case, the invoice was in the hands of the appraiser. She stated that, in order to make the amendment, it was necessary that she obtain the original invoice, in order to have a basis for the amended figures. She admitted that her firm knew of the increased prices but, according to her recollection, the customs examiners informed her that she must have the invoice in order to file an amended entry. She admitted that her firm usually has a duplicate copy of invoices on file, but stated that it had no copy of this invoice at the time. She did not know of the increased prices until a letter was received from the petitioner, about March 24, 1953, asking that the entry be amended. She made no inquiry from petitioner as to whether there had been any increase in the prices, but entered solely on the information given by the petitioner and the invoice values and information received. She made no attempt to get a duplicate invoice through the petitioner, because she had been told by the examiner that the entry could not be amended.

In the case of *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487, our appellate court restated the well-known rule that, in remission cases under section 489, *supra*, the burden rests upon a petitioner to show affirmatively that the entry was made without intent to defraud. In discussing the meaning of "satisfactory evidence," as used in said section 489, the court, in *United States* v. *Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507, used the following language:

As a matter of fact, this court has never applied the rule of reasonable doubt in determining the meaning of "satisfactory evidence," and in the case of *Glendenning, McLeish & Co.* v. *United States*, 13 Ct. Cust. Appls. 387, 390, T. D. 41320, the court, speaking through the late Presiding Judge William J. Graham, said:

* * * it is argued by the Government that a remission cannot be ordered except upon satisfactory evidence and that satisfactory evidence is evidence that convinces the mind beyond a reasonable doubt. We are aware that

courts have in some instances attached such a meaning to the term "satisfactory evidence." We have not, however, followed these holdings in remission cases. In *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220, we thus defined "satisfactory evidence":

> Proof of the circumstances and conditions, and a full and candid explanation thereof is required. Anything less than that is not sufficient.

To the same effect are *Hauptman* v. *United States*, 13 Ct. Cust. Appls. 295, T. D. 41218; and *Finsilver, Still & Moss* v. *United States*, *supra* [13 Ct. Cust. Appls. 332, T. D. 41250]. [Italics quoted.]

The great difficulty which confronts the courts in formulating a test for "satisfactory evidence" grows out of the fact that a party seeking remission of duties is confronted by the necessity of proving negatives and it is frequently extremely difficult satisfactorily to establish a negative, particularly a negative as to personal intent, because the actual intention of an individual is known only to himself and God.

When the here involved statute is dissected it is found that the person seeking remission must prove that the act of undervaluation was without any intent (a) to defraud the revenue of the United States; (b) to conceal or misrepresent the facts of the case; (c) to deceive the appraiser as to the value of the merchandise. Each of these three elements must be established by "satisfactory evidence."

In *United States* v. *Kenneth Kittleson et al.*, 43 C. C. P. A. (Customs) 31, C. A. D. 605, the appellate court summarized the above as follows:

In *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507, we recently held, after citing an extensive and uniform list of reliable authorities, that "satisfactory evidence" consists of proof of the surrounding circumstances and conditions, together with a full and candid explanation of an importer's conduct at the time of entry, as well as before and subsequent thereto, showing that his action in making the entry at the lower rate and his failure to amend the same was in good faith; and that satisfactory evidence relative to such good faith means the amount of proof which would ordinarily satisfy an unprejudiced mind.

In the case before us, the evidence shows that the prices of these willow baskets were increased after the order was placed, but that, as to the entry here involved, information as to such rise in prices was not forwarded to the import manager, through whose office clearance and entry of merchandise of this importer throughout the entire United States are made. When such information was received, petitioner's customs broker was instructed to amend this entry, but amendment was not permitted by the customs authorities. There seems to have been considerable confusion in connection with the changed prices, but, so far as this record shows, petitioner made an effort to amend the entry. Appraisement of similar merchandise imported by petitioner at other ports throughout the country was withheld at petitioner's request and the entries amended, but, as to this particular entry, the broker was not permitted to amend.

Upon the record, we find and so hold that the entry of the willow baskets here involved at values lower than those found on final appraisement was without intent to defraud the revenue or deceive the appraiser. The petition is, therefore, granted.