(C. D. 494)

FREEDMAN & SLATER, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 10, 1941)

*Millard A. Ring* for the petitioner.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Frank E. Carstarphen*, special attorney), for the respondent.

Before BROWN, OLIVER, and WALKER, Judges; BROWN, J., not participating

WALKER, Judge: This is a petition filed under the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties accruing by reason of undervaluation on entry of certain cattle hides imported from Argentina.

The actual owner and importer of the hides in question was H. L. Elkan & Co., a corporation engaged in the hide and pelt business having main offices in Chicago and a branch office in New York City. The petitioner in the case at bar is a corporation engaged in the

customs brokerage business in New York City who acted as agent for H. L. Elkan & Co. in the entry of the latter's imported merchandise.

The facts as to the particular entry involved, as developed in the record, are as follows: Elkan & Co. imported in the S. S. *Ogna* on February 11, 1940, two lots of hides from Argentina. One lot was invoiced at $99.25 per 100 kilos, and the other at $102.90 per 100 kilos. This difference is apparently due to the fact that the orders for the hides were placed 7 days apart, the market evidently rising between November 28, 1939, the date of the lower-priced shipment, and December 5, 1939, the date of the higher-priced shipment.

Entry was made in the name of the petitioner, as is the usual practice, to facilitate the expedition of the merchandise through the customs. Apparently no instructions were given the agent, the petitioner, by the principal, Elkan & Co., save to enter the higher priced shipment for consumption, and the other lot for warehouse.

For the petitioner one Benjamin Milzoff was called to testify. Mr. Milzoff identified himself as being in charge of petitioner's import department and particularly in charge of entries made for the account of H. L. Elkan & Co. He made the usual routine submission of the invoices to the appraiser before entry and in reply was advised that the appraiser had no information to offer concerning the same. In spite of the fact that he had before him two different prices for apparently the same kind of merchandise shipped on the same day, Mr. Milzoff entered the lots at the invoice prices on February 15, 1940.

The merchandise covered by the consumption entry (the higher-priced lot) was duly appraised and no advance was made, and it is not here involved except as a matter of evidence.

The merchandise covered by the warehouse entry remained in warehouse until May 3, 1940, when it was withdrawn and duty paid on the basis of the invoice value of $99.25 per 100 kilos.

Some time prior to July 29, 1940, Mr. Milzoff was informed by the appraiser's office that the value stated in the warehouse entry was too low, and he addressed a letter to the New York office of Elkan & Co. on July 29, 1940, so advising them and asking for instructions. On July 31, 1940, he received a reply, dated July 30, advising him that it would be satisfactory for him to amend the entry as mentioned in his letter.

Milzoff testified that the papers were on his desk and that he intended to amend the entry but before he got around to it some clerk in his office must have gathered up the papers and placed them in the "closed" file. The merchandise and invoice came under the observation of the appraiser for the purpose of appraisement on August 7, 1940, and appraisement was made on August 16. Later Milzoff went to the closed file in connection with another matter and found the papers in connection with this matter there, and on August 22

requested permission of the collector to amend the entry, but it was too late and the request was denied.

Section 489 of the Tariff Act of 1930 provides that remission of additional duties may be made:

upon the finding of the United States Customs Court, upon a petition filed * * * and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

Assuming, without deciding, that the acts and conduct of the petitioner and its employee, Milzoff, as agent of H. L. Elkan & Co. in the entry of the merchandise in question, were such as would warrant a finding under the above statute that there was no intention *on the part of the petitioner* to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise, yet there is not an iota of evidence in the entire record to show the absence of such intent on the part of H. L. Elkan & Co., the principal and actual importer of the hides in issue.

So far as the record discloses, no information was given Milzoff by anyone connected with the principal as to the correct value of the merchandise, although it would be most reasonable to assume that the principal, through its officers and employees, would be better informed as to the market or going prices for hides in Argentina on the date of exportation, and how such prices compared with the invoice prices, than the petitioner or its employees, since the principal was engaged in the hide and pelt business while the agent was engaged in the general customs brokerage business. If the principal, through its officers and employees, had no such knowledge, we think it was incumbent on the petitioner, as part of its *prima facie* case, to show that the principal, as well as the agent, knew of no other value at the time of entry than the value at which entry was made. See *Ittmann Bros.* v. *United States*, T. D. 49481.

It might be well to point out, also, that the petitioner herein apparently made no inquiry of the principal or anyone but the appraiser as to the relation of the invoice prices to the market value on the date of exportation, and, since it plainly appeared from the invoices that the price had advanced $3.65 per 100 kilos between November 28, 1939, and December 5, 1939, a reasonable and prudent man would have been placed upon notice that there was a rising or at least a fluctuating market and would have made a serious attempt to discover what the market value was on the date of exportation. Argentine hides are a staple market commodity and there is no showing here that all reasonable sources of information available had been

exhausted.   Merely to rest upon the appraiser's return of "no information," as petitioner did in this case, without exploring other avenues of information, does not demonstrate that measure of good faith and honest intentions as will warrant a finding in petitioner's favor.

For the foregoing reasons we are of the opinion that on the record presented it cannot be held that the petitioner has sustained the burden of proving that no intent to defraud the revenue, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise, existed, and the petition is accordingly *denied*.   Judgment will issue accordingly.