(C. D. 771)

AMERICAN SHIPPING CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 20, 1943)

*Strauss & Hedges* (*Hadley S. King* of counsel) for the petitioner.
*Paul P. Rao*, Assistant Attorney General (*Frank E. Carstarphen*, special attorney), for the respondent.

Before Oliver, Walker and Cole, Judges; Cole, J., not participating

Oliver, Presiding Judge: This is a petition for the remission of additional duties assessed under the provisions of section 489 of the Tariff Act of 1930. The facts may be briefly set forth as follows. The firm of Constance & Co., Ltd., of London, England, shipped through its forwarding agents, Hernu, Peron & Stockwell, Ltd., in London, what was purported to be "84 used 3 colour process electros." These articles were invoiced to the Manhattan Post Card Publishing Co. at New York under date of May 30, 1939. The entry was made by the petitioner, American Shipping Co., on June 8, 1939. On the face of the invoice there appears the following statement:

. Dear Sirs:
   These blocks are sent to you on loan to print an edition and after the printing to be returned by you to England.

                           Yours faithfully,
                     p. p.  D. CONSTANCE, LTD.

Carriers:—Messrs. Hernu, Peron & Stockwell Ltd., 18 Finsbury St. London.

Upon receipt of the shipping documents the petitioner made entry in its own name as nominal consignee setting forth in the entry that Manhattan Post Card Publishing Co. was the ultimate consignee. The articles described on the invoice as 84 used electros were entered at the invoice net value of $1 per set or a total value of $84. Upon opening the case containing this merchandise there was found what was thought to be 84 used *original* plates and the entire shipment was valued by the appraiser at £9 15s. 0d. per set packed less 2½ per centum discount, less 25 per centum for use. No notice of the fact that the shipment did not conform to the invoice description was ever given to either the petitioner or to the Manhattan Post Card Publishing Co. The only information of any kind given anyone was a rubber-stamp notation on petitioner's submission sheet (exhibit 2) reading: "Ascertain from shipper the correct foreign or export value. June 6, 1939." This submission sheet with said rubber-stamp notice thereon was put in petitioner's box at the appraisers stores .where it was picked up by petitioner's employee, Mr. Fredericks, who delivered it in due course to Mr. Spillner, the entry clerk of the petitioning cor-

poration. Petitioner's president, Mr. Graser, testified he had never received such notice, but in view of our decision herein that fact is not of vital importance.

It also seems that the petitioner at no time prior to entry or prior to notification of advance in value on October 20, 1939, had physically examined the merchandise, nor does it appear that the examiner at any time prior to advancing the value of the merchandise had notified the petitioner that the merchandise was different from the merchandise described on the invoice. It further appears that about the time the shipment arrived at New York, the Manhattan Post Card Publishing Co., who had contracted to print a quantity of post cards from these electros, had decided not to go forward with its agreement and had notified D. Constance, Ltd., in London of its intentions (exhibit 3). Manhattan Post Card Publishing Co. thus had apparently lost all interest in the importation and refused to call on or communicate with the appraiser when requested to do so by his office. It also refused to answer all calls or communications sent to the company by the petitioner herein. Manhattan Post Card Publishing Co. had not made the entry, had not signed the certificate of ultimate consignee, and had not executed the so-called owner's declaration and apparently felt it was a stranger to the transaction so far as the Government was concerned and did not want to be bothered. The first and only time it showed any interest was in October 1939, after the value had been advanced and additional duties to the extent of $2,784.26 had been demanded and petitioner had written the company to that effect. The company then sent its attorney to see petitioner and later caused a long letter of explanation to be sent to the collector at the port of New York (exhibit B). The petitioner herein, after the values had been advanced over the entered values, for reasons hereinbefore set forth, filed an appeal to reappraisement. Subsequently the merchandise was re-examined and it was then found for the first time that the shipment actually contained 10 of the used electros conforming to the invoice and entered description and 74 of the used *original* plates. In this reappraisement proceeding the court found the entered value to be the correct dutiable value for the 10 used electros in the shipment which conformed to the invoice description, and found the value of the 74 used *original* plates to be the appraised value.

The question presented herein, as in all petitions for remission of additional duties, is whether the facts in this particular case justify a finding that the petitioner acted in good faith and made a full and candid disclosure of all material facts in its possession to the customs officials, and did not intend to defraud the revenue of the United States or to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise.

The Government alleges that the petitioner herein received notice from the examiner prior to entry which should have put it on notice that something was wrong with this shipment. That notice (exhibit 2) was a rubber stamp on petitioner's submission sheet reading "Ascertain from shipper the correct foreign or export value. June 6, 1939." Petitioner was confident the invoice value was correct and made entry accordingly. That its confidence in the correctness of the entered value was well founded is borne out by the testimony of the examiner at the trial who stated that had all the merchandise conformed to the invoice description he would have valued it at the entered values. Moreover, in the decision rendered in the reappraisement proceeding had herein, the court found the entered value to be the proper dutiable value of the 10 used electros which were received and which conformed to the invoice description.

Just why the merchandise and the invoice description did not agree is not entirely clear from the record. The only explanation is by the exporter in its letter of February 16, 1940 (exhibit 4), which states that it was due to an error in packing. It is not claimed, nor is there any evidence to indicate that the petitioner knew, or had any reason to know, that there was a discrepancy between the invoice description and the goods actually shipped. If an actual mistake was made by the shipper and the petitioner entered what it had every reason to believe was the merchandise described on the invoice, it should not be liable for additional duties.

In *United States* v. *Eline's, Inc.*, 20 C. C. P. A. 60, T. D. 45680, a remission case, the importer imported merchandise known as vanillin or vanilline. It appeared that the importer thought it was ordering vanilline made from oil of cloves, which was admittedly dutiable at 45 per centum ad valorem. In fact, a letter from the foreign shipper, received by appellee before entry was made, contained the following information:

Inclosed we hand you further invoice for vanilline 100 percent chemically pure guaranteed made from oil of cloves.

The entry was made by the importer in the belief that the merchandise was made from oil of cloves. Upon analysis it proved to be made from coal tar and was accordingly held to be properly dutiable at the American selling price under paragraph 28. Additional duties were assessed at 75 per centum of the appraised value. The court said (page 62):

The merchandise involved here was the first purchase by appellee from the foreign seller. Everything in this record is in harmony with the theory that appellee acted in good faith in making its entry, and its proof, we think, complies with the requirements of the statute and entitled it to a remission of such duties. The court below correctly granted the petition for remission.

While it is true that notice to an agent or officer of a corporation imputes notice to the corporation, and we will assume that the petitioner corporation was charged with knowledge of the examiner's request for further information as to value (exhibit 2), the question is presented as to whether or not the petitioner, by the formal request to "Ascertain from shipper the correct foreign or export value," would have reason to suspect that the merchandise received differed from the invoice description. It is possible that inquiry from any responsible manufacturer or importer as to the proper dutiable value of "Used 3 colour process *electros*" would have thrown no light on the value of "*Original* 3 colour process colour *plates*." There is nothing in the record that would reasonably place the petitioner on notice that merchandise other than that described on the invoice had been shipped. The examiner has testified that if the merchandise received agreed with the invoice description, the entered value would have been the correct dutiable value.

While the examiner or appraiser is under no duty to give any information to an importer, it would undoubtedly have made a great difference in the actions of the petitioner had it received notice at any time after entry and before appraisement that the merchandise received did not conform with the invoice description, rather than a formal rubber-stamped request that petitioner "Ascertain from the shipper the correct foreign or export value."

It would seem that the additional duties here sought to be remitted should not have been imposed at all. There were 84 used electros invoiced and it had at first erroneously been assumed that the entire shipment consisted of original plates, and appraisement was made on that basis. After appeal to reappraisement had been filed this error was rectified and the value was advanced on 74 as originals to approximately $35 per set and value on the 10 electros was appraised as entered at $1 per set. There would thus appear to have been a shortage of 74 used electros in this shipment. Section 499 of the Tariff Act of 1930 and article 813 of the Customs Regulations of 1937 both make specific provision for deficiency in contents of packages as follows:

* * *. If a deficiency is found in quantity, weight, or measure in the examination of any package, report thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties.

It does not appear that such a report was made to the collector and obviously no allowance was made in the calculation of duties due. The shipment as received in this country also contained goods not specified on the invoice; namely, 74 original plates. These articles had not been invoiced or entered. They were excess merchandise and section 499 of the Tariff Act of 1930 and article 1105 of the

Customs Regulations of 1937 also specifically provide for such a situation as follows:

\* \* \*. If any package is found by the appraiser to contain any article not specified in the invoice and he reports to the collector that in his opinion such article was omitted from the invoice with fraudulent intent on the part of the seller, shipper, owner, or agent, the contents of the entire package in which such article is found shall be liable to seizure, but if the appraiser reports that no such fraudulent intent is apparent then the value of said article shall be added to the entry and the duties thereon paid accordingly. \* \* \*.

It would appear from the above that the value of the articles found in the package and not specified in the invoice (74 original plates) should have been "added to the entry and the duties thereon paid accordingly" and no additional duties would have accrued on such merchandise.

In *Downing & Co.* v. *United States*, 2 Ct. Cust. Appls. 278, T. D. 32033, an American concern closing its London office, returned to the United States a total of 139 cases of what was entered as American goods. It turned out that 135 of these cases were American goods returned, but the other 4 cases contained British goods. The collector admitted the American goods free of duty but assessed the goods of English origin not only for the usual duties, but for the additional duties prescribed for undervaluation by what was then section 32 of the Tariff Act of 1897. The importers protested against the assessment of the additional duties claiming that the English merchandise which was not mentioned on the invoice should be treated as excess goods omitted from the invoice and that under what was then article 1045 of the Customs Regulations (article 1105 of the Customs Regulations of 1937, *supra*), the regular duty should be paid but no additional duties added. The court pointed out, referring to section 32 of the Tariff Act of 1897 (section 489 of the Tariff Act of 1930) at page 280:

\* \* \*. In terms that section provides that "if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value *declared in the entry*, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty \* \* \* but the additional duties shall only apply to the *particular article or articles in each invoice that are so undervalued*." [Italics quoted.]

The court went on to point out:

\* \* \*. Under the language of the statute, to justify the imposition of additional duties, it would seem that there must be, first, a value declared in the entry; second, that the value must be applicable to some particular article set out in the invoice; and, third, that it must be below the appraised value.

In the case at bar no value for the original plates was declared in the entry and no originals whatever were included in the invoice. It

would thus seem that their subjection to additional duties was not authorized as the law itself provides that additional duty shall apply only to the particular article or articles in each invoice that are so undervalued.

In the *Downing* case, *supra*, the court further said (pages 280, 281):

\* \* \*. On a literal interpretation of the statute and on the assumption that there was no entry, invoice, or valuation of British goods, we think it plain that the British goods must be considered merely as excess goods and not subject to additional duties.

The court added that it was of the opinion that it was unintended that additional duties should be exacted on "goods neither entered nor invoiced nor valued by the importer." The court further said (page 281):

\* \* \*. On the theory that the invoice, entry, and valuation of American printed matter did not cover printed matter of British origin, the exaction of duties in addition to the usual duties would have to be sustained, if sustained at all, not because the importer undervalued an invoiced article, but because articles were imported which were neither entered, valued, nor invoiced.

And on page 282:

If therefore in this case packages *were* found to contain articles not specified in the invoice, it became the duty of the appraisers to determine whether such articles were omitted with fraudulent intent. If they so determined, the contents of the entire package became liable to seizure. If, on the other hand, the appraisers were of the opinion that the omission was made without any intention of evading duties or defrauding the revenues, the excess became subject to the usual duties only and on payment thereof the importer was entitled to delivery of the importation.

It is not contended by the Government that the excess merchandise herein was omitted from the invoice with any intent to defraud. The additional duties added herein were on the theory of undervaluation and by virtue of the provisions of section 489 of the Tariff Act of 1930.

The court in the *Downing* case, *supra*, said (page 283):

\* \* \*. If it can not be considered as a valuation of British goods, then there was no valuation whatever of British goods made by the importer and therefore no undervaluation.

In the case at bar the 74 original plates were neither invoiced nor entered and as in the *Downing* case, *supra*, they were not subject to advance in value and no additional duties could be assessed thereon.

In opposing the petition herein the Government urges that even though the petitioner (American Shipping Co.) has established that it was free from all intent to defraud the revenue, that this good faith must also be established on behalf of its principal (Manhattan Post Card Publishing Co.), citing in support of its position *Ittmann Bros.* v. *United States*, 73 Treas. Dec. 529, T. D. 49481; *Beeson* v.

*United States*, Abstract 42284; and *Freedman & Slater*, 6 Cust. Ct. 354, C. D. 494.

In the *Ittman Bros.* case, *supra*, the court said "where entry has been made by an agent  *  *  *  it is essential to establish the good faith of the principal as well as that of the agent." In the case at bar the relationship of principal and agent does not exist and even if it did, the record herein establishes that both the petitioner and the Manhattan Post Card Publishing Co. were acting in good faith. Every remission case stands on its own record. In a remission case there is ordinarily no presumption of fraud although the burden is placed upon the petitioner to establish that at the time of making entry there was no intent to defraud the revenue of the United States or to conceal or misrepresent the facts or to withhold any information from the Government officials.

This position of the Government is not supported by the facts. It presupposes the existence of the relation of principal and agent in the case at bar when such a relationship does not exist. The petitioner, American Shipping Co., was the nominal consignee. As such consignee it made the entry herein and therefore became solely liable to the Government for all duties and additional duties to be assessed against this importation. The fact that petitioner set forth in its entry that it was the nominal consignee and that the Manhattan Post Card Publishing Co. was the real or ultimate consignee did not relieve it of its obligation to the Government. Any action by the Government to recover duties, additional duties, or penalties would, of necessity, be directed against the petitioner herein or its sureties and not against the Manhattan Post Card Publishing Co. There was only one way the petitioner could have been relieved of this obligation and that, specifically provided for in section 485 (d) of the Tariff Act of 1930, is to have had the ultimate consignee execute the so-called owner's declaration "conditioned that he will pay all additional and increased duties  *  *  *."

The petitioner in the case at bar, the American Shipping Co., is for tariff purposes not an agent but is the principal and is the sole party directly liable to the Government for all duties and additional duties due upon this shipment, as no owner's declaration was executed or filed.

In *Thomas Maginnis* v. *United States*, 61 Treas. Dec. 348, T. D. 45471, decided in the Court of Claims, the court said, pages 349 and 350:

The petition shows that the merchandise was imported in the name of A. C. Merkle, who paid the duties assessed thereon. The plaintiff is an entire stranger to the record so far as the importation of the goods and the payment of the customs duties are concerned. Under the provisions of section 483 of the tariff act of

1922 (42 Stat. 858), Merkle, as the consignee, became and was the owner of the goods for customs purposes.

Section 485 (d) of the act provides (p. 961):

A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within 90 days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee.

The petition shows the consignee's declaration referred to in this section was never filed as to part of the merchandise in question, and as to the remainder was not filed within the 90 days required. Merkle, therefore, at all times remained the owner of the merchandise falling within these two classes and was liable for any additional duties that might have been assessed against it.

The cases cited by the Government above are clearly distinguishable from the case at bar.

In the *Beeson* case, *supra*, the actual owners had filed the owner's declaration and thereby established themselves as principals and the petitioner as agent acting for them. That is not the situation in the instant case.

In the *Ittmann Bros.* case, *supra*, no owner's declaration was filed and the court held the broker who made the entry:

* * * primarily liable for the payment of such duties, and we conclude that they are therefore proper parties to file a petition for their remission.

The court denied the petition indicating that petitioners had failed to produce certain bank drafts which might have supported their testimony and for failure of any member of the importing company to testify as to the price actually paid or whether they had any knowledge of the market value on the date of shipment. These conditions are not present in the case at bar.

In the *Freedman & Slater* case, *supra*, the petitioner was Freedman & Slater, Inc., customs brokers, but the entry was made by and in the name of H. Elkan & Co., Inc., who also signed the ultimate consignee's certificate. Freedman & Slater, Inc., the petitioner, did not even execute the declaration of nominal consignee certificate nor was the entry made in its name. These facts are clearly distinguishable from those in the case at bar in that in the instant case the entry was made by and in the name of the broker and the ultimate consignee, Manhattan Post Card Publishing Co., refused to assume any responsibility in relation thereto.

For all the reasons set forth herein and upon the record before us it seems clear that the petitioner has established that it was free from any intent to defraud the revenue or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petition is granted.