BEFORE THE FIRST DIVISION, DECEMBER 11, 1943

**No. 49028.**—Petition 6357–R of Naumes Forwarding Service (Chicago).

COLE, Judge: In this case, a petition was filed under the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1489), seeking remission of additional duties accruing by reason of the final appraised value exceeding the entered value of a shipment of anchovies in oil exported from Lisbon, Portugal, and entered at the port of Chicago, Ill.

The only testimony is that of the petitioner, a customs broker who has been in business at the port of Chicago since 1903, and who made the entry in question. He stated that it has been his ordinary practice to submit an invoice to the examiner "to find out whether he has any information regarding value," but failed to do so in the present case due to peculiar surrounding circumstances, which were explained as follows: The importer of the merchandise was not available, being in Benton Harbor, Mich., attending his sick wife, when the documents required for making entry came to petitioner's attention. This was at a time when "the shipment was due to go to general order," meaning that the time allowed for imported merchandise to remain on the wharf or pier, prior to entry, was about to expire (Customs Regulations, 1943 ed. part IV, section 37). To avoid cartage and storage charges, which would have accrued against the importer if the merchandise had been ordered to general order, petitioner hurriedly, without consulting either the importer or any customs official, prepared and filed an entry on the basis of the invoice value. The appraiser's advance amounted to approximately 3 percent of the entered value, and it is the additional duties, accruing by reason of the higher appraised value, that are sought to be recovered here.

After entry, but before appraisement, petitioner furnished the customs officials with all information in his possession, including documents (collective exhibit 1) from the shipper, all of which confirmed the entered value as representing the price actually paid for the goods. No attempt was made to amend the original entry, because, as stated by the witness, "We were not requested to amend," and adding that usually, "They call us in and give us the information they have received, or if it is in their files they show it to us and give us permission to amend." There is no denial that the practice was as outlined by the witness. In reply to the specific question, "Was that done in this case?", the witness answered, "Absolutely not."

It was shown under respondent's cross-examination that, earlier on the same day the entry in question was tendered, the witness made another entry of substantially the same merchandise for a different importer at a higher value. It is now argued by counsel that such an admission reveals knowledge by petitioner of the advanced price when the shipment in question was entered, and therefore this petition should be denied. In other words, it is contended that the petitioner was guilty of concealment and misrepresentation with intent to defraud the Government because the very same party in other dealings with customs officials involving similar goods had submitted an entered value acceptable to the appraiser. The witness' reason for not using the higher value was because "It (the merchandise) might not have been from the same exporter."

Further testimony developed that the witness was interviewed by a customs agent when this petition was pending, and in this connection he was interrogated by the court as follows:

Q. At this point, when you gave the information to the customs agent, did you tell him there was another shipment in which you were interested of similar merchandise which was entered at a different value?—A. He asked me. You see, we had two entries. One was advanced, and the other entry, that's the earlier one we had.

Q. The same value should have been applied on both?—A. I didn't know. They were purchased at the same time, but I didn't know that. I didn't know that the other entry might have been purchased at a different date.

Q. So he asked you if you had any information about the shipments?—A. He asked me if I had any other shipment, and I told him about the entry I made earlier and he asked me for the entry number. I told him I didn't recall it but I would get it and call him back and I did that. I gave him everything because we had nothing to conceal.

Q. When the two entries were produced, they showed a different value on the two shipments?—A. That's right. It was possible that the other shipment was purchased later than the Alessio shipment, and it's possible the market value was higher. We entered at the full amount paid for the merchandise. I think I have some papers here I delivered to the examiner.

The foregoing situation does not reflect the conduct of one concealing and misrepresenting facts with intent to defraud the Government.

Here, as in all cases of this character, the principal question is the good faith and intention of petitioner in entering the merchandise, *United States* v. *American Metal Co.*, 12 Ct. Cust. Appls. 440, T. D. 40612, so this class of litigation is determined largely, if not entirely, upon the record in each particular case. In the several cases cited in respondent's brief, the established facts were not comparable with those presented here, and therefore cannot be accepted as controlling of the instant case.

In *European Linen Importing Corp.* v. *United States*, C. D. 778, it was held in effect that in determining whether a petitioner has sustained the statutory burden imposed under section 489, *supra*, it is proper to inquire into conduct from the time entry is filed until appraisement is made, including the period when valid amendment (section 487 of the Tariff Act of 1930, (19 U. S. C. 1940 ed. § 1487)) is permitted. In accordance with that rule, the attitude of the petitioner in this case, after filing the entry and before official action by the appraiser becomes a matter to be considered in reaching our conclusion. During that time, the witness showed a desire to cooperate, as disclosed by his testimony, and furnish the appraiser with all available information concerning the value of the instant merchandise.

The most unfavorable view that can be taken of petitioner's case is that it reflects a disposition to be careless, evidently prompted, in this case, by the urgency in having the merchandise released and relieved of extra charges to which it would be subjected under general-order warehousing. Such conduct, however, is not a bar, within the meaning of the statute, for the remission of additional duties assessed under said section 489. *United States* v. *Fish*, 268 U. S. 607.

The writer conducted the trial of this case at Chicago and observed the demeanor of the witness throughout the entire proceedings. We have a very definite recollection of the willingness with which he offered his testimony and the straightforwardness that characterized the answers to all questions propounded to him. His presence on the witness stand was thoroughly contradictory to anything indicative of an attempt to defraud the Government or deceive the appraiser in his entry of the merchandise in question.

On the record before us and all the circumstances in the case, we hold that the petitioner is entitled to the relief requested. The petition is therefore granted and judgment will be rendered accordingly.