(C. D. 838)

GERHART L. KOBRAK *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 22, 1944)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the petitioner.
*Paul P. Rao*, Assistant Attorney General (*Frank E. Carstarphen*, special attorney), for the respondent.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

KINCHELOE, Judge: This petition, praying for the remission of additional duties incurred by reason of undervaluation of imported merchandise upon entry, was filed under the provisions of section 489 of the Tariff Act of 1930.

The merchandise consists of so-called nutria pieces exported from Buenos Aires, Argentina, and was entered at the port of Philadelphia, on May 29, 1942, entry No. 3260, in the name of Koons, Wilson & Co., for the account of Gerhart L. Kobrak, at a total value of $639. It was appraised on July 9, 1942, @ U. S. $1.26777 per kilo, net, packed, or a total valuation of $1,688.

At the trial of the case at New York there were offered and admitted in evidence, as collective exhibit 1, three cablegrams which represent the contract of purchase of the merchandise. So far as here pertinent, these cablegrams are as follows: One dated March 2, 1942, from Lasker Cia to Gerhart Kobrak, offering "THREE BALES NUTRIA PIECES JOINTLY DRAWING 70% ONE NOUGHT FIVE"; one from Gerhart Kobrak to Lasker Cia, dated March 3, 1942, stating "RUSH SHIPMENT NUTRIA PIECES 50% ADVANCEMENT," and one from Lasker Cia to Gerhart Kobrak, dated March 6, 1942, stating "NUTRIA PIECES AGREE." As heretofore stated, these cablegrams represent the contract, and the actual price paid, for the merchandise.

There was also offered and received in evidence as exhibit 2, the following from a letter dated March 6, 1942, addressed to Lasker &

Cia, Buenos Aires, Argentina, and which, although not signed, was apparently written by Gerhart Kobrak:

*Nutria pieces:* I wrote you that I was not a bit anxious to get the consignments and that simply as an accomodation I would take your lot on a 50% advancement, as a straight consignment, not joint account. I do not know why you had to cable about the advancement back and forth. Particularly in the light of what you wrote me in your last letter regarding consignment business in general, I have no reason to change my point of view, as a matter of fact, felt first like withdrawing my offer altogether.

Meanwhile, I opened Letter of Credit today by increasing Credit #11907 (for the Nutria pieces as well as Backcut Lagartos) and hope you will ship the merchandise shortly, of course to New York, if possible, otherwise Philadelphia. I presume you want a contract from me along the lines issued by me today. Otherwise I shall change it. Naturally, it is understood that the goods are a consignment by you, not joint account.

In addition to the documentary evidence, counsel for the petitioner offered the testimony of the actual importer, Gerhart L. Kobrak, and of the customhouse broker who handled this matter at New York, Julius Schneider. In rebuttal, counsel for the respondent offered the testimony of the customs examiner, Frederick A. Stubbe, who examines such and similar merchandise at the port of New York.

It appears from the record that witness Kobrak has been a broker in hides and skins for the past 20 years, representing, as agent, Lasker & Co. of Argentina, in the United States and Canada, dealing in hides and skins and byproducts, which, with few exceptions, are not subject to duty under our customs laws, nutria pieces, such as and similar to those in this case, being one of the exceptions.

Referring to the instant importation, witness Kobrak stated, in substance, that he received an offering from Lasker & Co. of Buenos Aires, Argentina, on March 2, 1942, of three bales of nutria pieces on joint account at a cost price of $1.05, against which the shipper wanted to draw 70 per centum; that he replied to that offer on March 3, 1942, agreeing to the terms of the offer, but limiting the advancement to 50 per centum, to which Lasker & Co. cabled back an acceptance; that he confirmed these cables in writing, and "I added that I took the transaction on the basis of a consignment," and then opened a letter of credit for 50 per centum.

Shortly after the above cablegrams petitioner received a bill of lading and a consular invoice covering the merchandise, and thereupon telephoned his customhouse broker, witness Schneider, "to pick them up the same as I always do when I get documents," and petitioner turned these documents over to his New York customhouse broker without any instructions. The witness stated that thereafter his New York customhouse broker requested him to submit the cablegrams by means of which this merchandise was purchased, with which request he complied, but that he had no personal contact with the

appraiser; that he did not notice that the consular invoice showed a price of only 52½ cents, whereas the cablegrams called for a purchase price of $1.05. "I gave the papers, as usual, to Schneider, and since I never had any dutiable merchandise before it never occurred to me that I should have pointed out to Schneider that the actual value of the merchandise was really twice as high as that indicated in the shipper's invoice." "Q. You did, through your brokers, submit to the appraiser before entry the cables in petitioner's exhibit No. 1?—A. Yes."

Explaining why the merchandise was entered at 52½ cents instead of at $1.05, as shown in the cablegrams, the witness stated: "Well, the truth of the matter is it was a mistake. I always hand all documents to Schneider. I never had any dutiable merchandise that I had to pay any duty on, and for that reason it never occurred to me to inform Schneider that the actual value of the goods, * * *." "I never had any dutiable merchandise before. If I had thought of the duty I naturally would have pointed it out to Schneider."

In closing his testimony on direct examination the witness stated that he did not conceal any facts from the Government officials, definitely did not intend to misrepresent any of the facts to the appraiser, and did not intend to defraud the revenue of the United States.

On cross-examination much time was devoted to an effort to show that petitioner had made many entries of dutiable merchandise, but, with the possible exception of one entry, it was definitely shown that during his 20 years of experience as an importer this was the only entry of dutiable merchandise made by petitioner where he actually paid the duty.

The cross-examination also developed that the last importation of nutria pieces made by petitioner prior to the involved importation was on August 8, 1941, and this shipment, as well as all other shipments of nutria pieces, was sold by petitioner prior to arrival in this country and the duty assumed and paid by the purchaser.

Explaining why he did not examine and check the invoice in this case, the witness stated: "If you want me to say the truth I can only tell you I do not examine the papers which come to me. There is no need for it. I always had duty-free merchandise. There was never anything involved."

The witness frankly admitted that he knew the invoice showed a price of $0.5257, and that he knew the price in Argentina was $1.05; that he had these cables at the time he sent the papers to Schneider, but did not send them "Because at the time I did not think there was anything—any reason for giving him any explanation. We had these cases before and I didn't give him anything either." "It would have occurred to me that the invoice value here was half of the actual value

if it was not for the fact that we had these cases all the time. Only in the past it had. never been drawn to my attention that this was an important point because all that merchandise was duty free. So it had become a custom of mine not to bother about this point. At the moment I did not think at all about it. That is the truth of it."

With reference to the invoice showing only one-half of the price actually paid, the witness explained that this was because of the exchange laws in Argentina which make it impossible to ship merchandise and draw for any other than 100 per centum of the value as shown on the invoice; that one cannot export from Argentina on consignment until representations are made to the Argentine officials that the price shown on the invoice is 100 per centum of the price actually paid for the merchandise.

It is also shown by the record that prior to making entry and on May 29, 1942, there was submitted to the appraiser at Philadelphia a request for information as to the value of the merchandise and that attached to said request were copies of the three cablegrams, the originals of which constitute collective exhibit No. 1.

Witness Schneider testified that he had been a customhouse broker for 21 years and as such had represented the petitioner herein over a long period of years; that he received the documents in this case from petitioner and forwarded them to his correspondent in Philadelphia with instructions to make a dutiable entry, without instructions as to the value at which to enter, and that the merchandise covered by all the entries heretofore made by him for petitioner was free of duty, except one entry made for warehouse, but on which petitioner did not pay the duty, because the merchandise was sold before duty was paid, and the purchaser paid the duty.

Counsel for respondent offered the testimony of Examiner Stubbe of New York regarding a request for information as to the value of this merchandise which he had received from the Philadelphia examiner, but this was long after the entry herein was made, and is, therefore, not material. The witness did testify, however, that he had known petitioner for about 8 years, and that he had had certain dealings with him regarding previous importations made by petitioner regarding the value of the instant merchandise, and that he, petitioner, had advised him that the purchase price thereof was $1.05, and that although his experience with petitioner had been limited, "he has always been aboveboard with me, so far as I could determine"; that to his knowledge he had never misrepresented any facts and that on one occasion petitioner had assisted him in arriving at the value of similar merchandise of another importer.

It should be borne in mind that duty was *assessed* by the collector and *paid* by the importer on the value found by the appraiser, which was higher than the entered value. Consequently, he has already

been subjected to the payment of increased duty for entering his merchandise at a value lower than that returned by the appraiser. So, the issue herein relates *only* to the remission of additional duties which were imposed pursuant to the provisions of section 489 of the Tariff Act of 1930, and the question of the correct dutiable value of his merchandise is not involved.

We feel that the facts, as hereinbefore set out, require a holding that, in making entry of the merchandise, petitioner herein was careless and negligent. Petitioner knew from the time the transaction for the purchase of the merchandise was completed until after the entry was made that he had paid $1.05 for the nutria pieces. He at no time denies this fact, and, as shown by the record, long after the entry was made, he frankly admitted to the New York examiner that he had paid $1.05 per kilo. At the time the Philadelphia broker asked for information as to the value at which to enter, petitioner promptly forwarded all the cablegrams connected with the purchase of the merchandise, and copies of such cablegrams were attached to the request for information as to value which was filed with the appraiser prior to entry.

The only information in petitioner's possession as to the proper value at which to make entry was these cablegrams, and when he submitted these cablegrams to the appraiser prior to making entry, it can scarcely be said that he was withholding information from the appraiser as to the proper value of the merchandise. It is clear from the notation on the request for information that the appraiser at Philadelphia had no information as to the proper value. This is further indicated by the fact that he communicated with the examiner at New York with respect to such value prior to making his appraisal.

As to just why the broker in Philadelphia made the entry at the price shown on the invoice when he had before him the cablegrams showing a much higher purchase price for the merchandise, there is no explanation in the record before us. Certainly he did not do so because of any instructions received from the petitioner herein, because it is definitely shown that petitioner gave no instructions as to the value at which to make entry.

In our opinion this case resolves itself into a question of whether or not the petitioner's carelessness in connection with the entry of the merchandise is sufficient to deny him the relief prayed for. In this connection it should be remembered that the record shows that petitioner had been importing merchandise for some 20 years, the majority of which was free of duty under the tariff laws, and also that this was the first entry of merchandise made by petitioner upon which he was required to pay duty. Only a very few other entries of dutiable merchandise were made by or in the name of petitioner, and

in each of those cases the merchandise had been sold prior to arrival, and the purchaser paid the duties.

The case of *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls., 395, T. D. 41322, presented a situation similar to the present case. In that case *two days after* the entry had been made, the appraiser notified the importer that there was something wrong. The importer "frankly admitted that the value of twine had been overlooked and furnished to the appraisers a copy of the invoice which was sent by his company * * *." When the value of the twine was added to the value of the other merchandise, the value of the importation was thereby advanced more than 100 per centum. In reversing the decision of this court and granting the remission prayed for in that case, our appellate court observed:

> The fact that on reading the invoice the appraiser discovered that the value of the twine had been omitted is certainly substantial evidence that the invoice was not prepared to mislead or deceive him. In our opinion no intention to deceive can reasonably be attributed either to the shipper or to the importer. *The importer and the customs broker may have been careless, negligent, or lacking in diligence and for such delinquencies the goods might be subjected to additional duties if the statute so provided. The statute does not so provide, however, and mere carelessness, negligence, or want of diligence on the part of the importer, coupled with no fact or circumstances which shows or reasonably tends to show that there was an intention on his part to defraud the revenue or to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise, does not justify the conclusion that such an intention existed.* Certainly, it cannot be presumed that the importer in this case had any ulterior purpose in presenting to the customs officials an invoice which did not include the value of the material used in the manufacture of the goods and manifestly disclosed that omission to the appraiser. [Italics ours.]
>
> The judgment of the board is *reversed*.

Again in the case of *Syndicate Trading Co.* v. *United States*, 13 Ct. Cust. Appls., 409, T. D. 41339, our appellate court stated:

> We have recently in effect held, in cases of this character, that if the importer exercises what is, *under the circumstances of the case*, absolute good faith in making his entry, and fully and candidly discloses all the material facts bearing upon the value of the merchandise, he is entitled to a remission of additional duties. *Hauptman* v. *United States*, 13 Ct. Cust. Appls. 295; T. D. 41218; *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301; T. D. 41220; *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273; T. D. 41212. [Italics ours.]

In *United States* v. *Fish*, 268 U. S. 607, referring to the facts in that case, the Supreme Court stated:

> At the hearing before the Board the only witness was the importer, who testified that when he bought he got quotations by cable, that the market changed rapidly, sometimes as much as 50 percent, that he had been importing for two years and that this was the first instance in which there had been an advance in value by the appraiser; that he gave the broker the invoice and told him to make the entry, and that in so doing he did not intend to deceive the appraiser. This was all the evidence.

In disposing of that case on the merits, the Court said:

> Upon the merits of the case, we think the Court of Customs Appeals was right

and that the finding of the Board of General Appraisers did not respond to the requirement of the statute. The issue to be found by the Board was whether the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The issue presented to the Board was, "Has the importer sustained the negative in this regard?" *Merely to find that the importer was careless is not a finding sufficient to justify the Board in deciding whether there should be a remission.* * * *. [Italics ours.]

So far as our research goes this is the last pronouncement of the Supreme Court, holding in substance that carelessness on the part of an importer in entering his merchandise at a lower value than the final appraised value is not, in and of itself, sufficient to justify this court in denying a petition for the remission of additional duties incurred by reason of such undervaluation. Until this ruling is either overruled or modified by the Supreme Court we feel legally bound to follow this decision.

Our appellate court in the *Linen Thread* case, *supra*, seemed to have taken this same attitude.

If the pronouncements in the above quotations regarding carelessness and negligence are to be given any effect it cannot be said that the carelessness and negligence of petitioner in this case are sufficient to deny him the relief prayed for.

In *Grebstein* v. *United States*, 15 Ct. Cust. Appls., 285, T. D. 42470, our appellate court observed:

* * *. What the evidence must be to require a judgment in importer's favor must, therefore, depend upon the circumstances surrounding each entry, and we have often held that we will be slow to disturb the finding of the court below on the weight of the evidence in cases of this character.

The rule stated in this quotation, we feel, is very sound with reference to the subject to which it is addressed. Evidence as to the good faith of an importer applying for remission of additional duties under section 489 must, of necessity, be considered and weighed in the light of the circumstances surrounding each entry. Evidence entirely sufficient to establish good faith under the circumstances surrounding one case might well be held completely insufficient to establish good faith under the circumstances surrounding another case.

Under all the circumstances surrounding the entry of the merchandise here involved, we are convinced, and so hold, that the weight of the evidence establishes that the petitioner herein, in entering his merchandise at a less value than that found upon final appraisement, acted without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The disclosure by petitioner to the appraiser, prior to entry, of all the facts in petitioner's possession as to the value of the merchandise would not warrant any other conclusion.

While not specifically so stated by any witness in this case, the record, as a whole, warrants a finding that in petitioner's 20 years of experience importing merchandise this is his first case of under-valuation.

Therefore, for all of the reasons hereinbefore stated and in harmony with the authorities cited and quoted, we hereby grant this petition. In arriving at this conclusion we have not overlooked or failed to give careful consideration to the authorities relied upon by counsel for respondent as supporting a different conclusion. In our view the facts and circumstances surrounding this case do not bring it within the pronouncements made in any of said authorities. Judgment will be rendered in accordance with the conclusion heretofore announced.