BEFORE THE THIRD DIVISION, NOVEMBER 19, 1947

**No. 52046.**—Devonshire Mills Co. *v.* United States, petition 6526–R (Philadelphia).

CLINE, Judge: This is a petition for the remission of additional duties assessed under section 489, Tariff Act of 1930, for the undervaluation of merchandise.

The merchandise consisted of bleached and unbleached cotton cloth exported from Mexico on June 11, 1943, and entered at Wilmington, Del., on July 1, 1943. The bleached cloth (style No. 666) was entered at 1.73 Mexican dollars per meter

and appraised at 2.14 Mexican dollars per meter, and the unbleached cloth (style No. 444) was entered at 1.50 Mexican dollars per meter and appraised at 1.80 Mexican dollars per meter.

Frank C. Distler, vice president of the importing company, testified that this was the only importation of cotton cloth the company had ever made; that he had arranged with John A. Steer & Co., customs brokers, to take care of the entry; that he subsequently received from them the entry papers and a so-called request for information or submission sheet, which he looked over casually and signed. The record shows that on or about May 29, 1943, the petitioner had placed a subsequent order for similar merchandise at 1.80 Mexican dollars for style No. 444 and 2.10 Mexican dollars for style No. 666 (respondent's exhibit 4). However, that order was not noted upon the submission sheet, which was signed by Mr. Distler on or about June 26, 1943 (petitioner's exhibit 2). Mr. Distler stated that he had not disclosed it because he did not think the purchase price of a subsequent shipment would affect the value of the merchandise in this case and because he thought the price he actually paid for the goods was the price on which he had to pay duty.

Thereafter in August 1943, Mr. Charles Moore of John A. Steer & Co., received a questionnaire from the appraiser to be filled out by Devonshire Mills Co., which he forwarded to Mr. Distler. This questionnaire, executed by Mr. Distler, on August 30, 1943, contains the following (petitioner's exhibit 1):

57. Have you placed orders subsequent to this purchase, or received by correspondence or otherwise, information indicating a change in the value of this merchandise? Yes.
58. If so, give details. Answer to question 60 covers this.
59. What has been the market tendency from the date of this purchase, advancing or declining? Advancing.
60. Give details of changes. One style advanced from 1.50 pesos to 2.30 pesos. Other style advanced from 1.73 pesos to 2.00 pesos.

Mr. Moore testified that when the questionnaire was returned to him he noticed that there had been merchandise at a higher value but he assumed that it applied to something which happened after the date of exportation of the first shipment.

In November 1943, Mr. Distler was interviewed by Charles L. Turrill, customs agent, at which time he disclosed the correspondence relating to the second order. The correspondence, quoted in Mr. Turrill's report (respondent's exhibit 4), indicates that the order was later canceled because of a delay in shipment. Mr. Turrill's report also contains the following statement:

Mr. Distler stated that the instant shipment was the first importation made by his corporation and that he had no knowledge of customs laws and regulations. According to his recollection, the submission sheet had been filled out and sent to him by the customs brokers making the entry, and that he had signed it without knowledge that he should have added information relative to the subsequent order.

Mr. Distler testified at the trial that, other than signing the papers prepared by his broker, he did nothing to ascertain the value of the goods.

Mr. Moore testified that he had prepared and filed a submission sheet so that he would have the right to any information that the appraiser might have and that he hoped to have the right to agree afterwards and to make amendments so that a proper dutiable value would appear. However, no attempt to amend the entry ever was made. Mr. Moore stated that the first intimation he had that the entered values were considered incorrect was about December 24, 1943, when the notice of appraisement was sent out; that he had not been told there was anything wrong about the entered values nor had anyone suggested that he amend the entry and that that was contrary to the usual practice.

An appeal for reappraisement was filed and prosecuted on the theory that the goods were defective, but the court held that the plaintiff had failed to prove the Mexican "standard" quality for these goods or by what degree the imported merchandise differed from such "standard" or the market value in Mexico for "substandard" merchandise. *Devonshire Mills Co.* v. *United States,* 15 Cust. Ct. 408, Rcap. Dec. 6203.

Mr. Distler testified further that at some time after entry the Government made a demand for the forfeiture value of the merchandise in the amount of $79,303.52 and that this claim was eventually settled for the sum of $50. The correspondence (respondent's collective exhibit 7) indicates that the demand was made under the provisions of section 592 of the Tariff Act of 1930 because of the failure to disclose the subsequent order on the submission sheet and that the penalty was mitigated to such a small sum because no opportunity was afforded to amend the entry and because "if the appraisement of merchandise was sustained in the appeal to reappraisement it would be subjected to additional duties in the sum of $11,690.67" (petitioner's exhibit 6). A prior letter from the assistant collector to the commissioner of customs recommended that the liability under section 592 be satisfied by the payment of approximately half the revenue that would have been lost had the appraiser adopted the importer's entered value (respondent's collective exhibit 7). The letter also states:

While there appears to have been neglect by the Devonshire Mills Company at the time of entry with respect to its furnishing information to the appraiser as to value nevertheless from the evidence of record the Collector is satisfied that there was no deliberate attempt to defraud the revenue.

Mr. Distler's attention was called to the following statement in a letter from the Commissioner of Customs to the collector at Philadelphia (respondent's exhibit 5):

The investigating officer of the Customs Agency Service reports that the customhouse broker informed him in the presence of the attorney for the importer that he, the customhouse broker, telephoned the petitioner and inquired as to whether there were any subsequent orders. The reply was in the negative. * * *

Mr. Distler stated, however, that the customhouse broker, John A. Steer & Co., had never asked him specifically whether there were any subsequent orders. Mr. Moore was also asked whether he had made such an inquiry of Mr. Distler and he testified as follows:

I never did; no. I don't recall it if I did. I won't absolutely deny it, but I haven't the slightest recollection, and I think if there had been anything of that kind, I would have taken action. There is nothing in my mind about it. I had several talks with Mr. Lavette [sic] not only on this case, afterwards, of course, when things were moving along. One time in Wilmington with Mr. Sterner, and a couple of times here in Philadelphia I talked with Mr. Levett, but I never remember meeting a special agent in this case at all.

At a subsequent hearing defendant called Charles R. Howard, who testified that he was customs agent in charge at Philadelphia in 1943; that he had had a conversation with Mr. Benjamin Levett and Mr. Charles Moore about two or three weeks prior to February 14, 1944; that Mr. Moore stated that he had telephoned to the importer and asked if there had been subsequent orders and that the importer said "No"; that he made a memorandum of that conversation after it took place. The memorandum, admitted in evidence as respondent's exhibit 9, states as follows:

*Devonshire Mills*

Chas. H. Moore
 John A. Steer & Co.

This man stated in presence of Ben Levett in this office (at time of his visit on the subject) that he (Moore) had telephoned the importer at NY to ascertain if there was any other value or other orders and the importer said "no."

CRH

Mr. Howard, in reply to a question as to what led up to Mr. Moore's statement, testified as follows:

Well, I have told you that I have refreshed my memory from this conversation, and the way I would express it, I put a little barb into Mr. Moore in this wise; I said, "I think it is the duty of a customhouse broker who is licensed by the Treasury Department to find out all of the information that is necessary for the appraising officer to find a dutiable value." And Mr. Moore immediately jumped back at me in defense, and said, "I tried to do that, and I telephoned the importer and asked him if there had been any further orders; and he said 'no'."

Benjamin A. Levett testified that he was at one time attorney for the Devonshire Mills Co.; that he was in Mr. Howard's office on January 21, 1944; that he could not recall any interview at which both Mr. Howard and Mr. Moore were present; that he recalled a conversation with Mr. Moore in which Mr. Moore stated that he had telephoned to Mr. Distler in regard to whether there was a subsequent order and that Mr. Distler had told him "No," but he could not recall whether this statement was made in the presence of Mr. Howard; that he had asked Mr. Distler about the conversation and that Mr. Distler said that Mr. Moore had not telephoned to him. Neither Mr. Howard nor Mr. Levett was present when the telephone conversation was supposed to have taken place.

Under the provisions of section 489, Tariff Act of 1930, additional duties may be remitted upon a finding "that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise." In the instant case the petitioner had little experience in importing merchandise and believed that the price of the subsequent order had nothing to do with the dutiable value of this shipment. For that reason he did not disclose the subsequent order to customs officials at the time of entry. However, in the questionnaire and in his interview with the customs agent, he revealed all the facts and the correspondence in regard to the second order. There is no evidence that he would not have done so on entry, had he realized the necessity therefor.

In *Gerhart L. Kobrak* v. *United States*, 12 Cust. Ct. 112, C. D. 838, appeal dismissed, 32 C. C. P. A. 207, the merchandise was entered at $.52½ instead of $1.05. The importer testified that since he had never had any dutiable merchandise before, it did not occur to him to point out to his broker that the actual value was twice as high as the invoice value. It was held that petitioner's carelessness in making the entry was not sufficient to deny him relief.

It is significant in the instant case that the Government's demand for the forfeiture value of the merchandise in the sum of $79,303.52 was mitigated to $50, because the collector was satisfied that there was no deliberate attempt to defraud the revenue and because no opportunity had been given to the importer to amend the entry.

In *Stone & Downer Co.* v. *United States*, 9 Cust. Ct. 384, Abstract 47406, the petition was granted where it had been agreed that the importer should be given an opportunity to amend, but through an oversight the entry was not amended. The petition was also granted in *C. J. Tower & Sons* v. *United States*, 16 Cust. Ct. 219, Abstract 50867, where subsequent to entry petitioner learned that the prices paid were higher than those stated on the entry; that he expected that an opportunity to amend would be given as was customary in such cases, but that before that could be done, the merchandise had been appraised.

Another evidence of good faith on the part of the importer herein is the fact that he prosecuted an appeal for reappraisement, but the evidence was not sufficient to sustain its case.

After careful consideration of the record herein, we find that the petitioner, in making the entry in this case, acted without intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petition is granted. Judgment will be rendered accordingly.