No. 57452.—A. N. Deringer, Inc. v. United States, petition 6855–R (Ogdensburg).

OLIVER, Chief Judge: This is a petition, filed pursuant to the provisions of section 489 of the Tariff Act of 1930, seeking remission of additional duties which accrued by reason of the final appraised value exceeding the entered value of nylon yarn on spools and bobbins, exported from Montreal, Canada, and entered at Champlain, N. Y.

Petitioner entered the nylon yarn at $2.55 per pound and placed no value on the spools and bobbins. The merchandise was appraised at $4.50 per pound for the nylon, 20 cents each for 3,300 spools, 60 cents each for 378 aluminum bobbins, and 45 cents each for 781 other bobbins.

The petitioner is a customhouse broker. The entry in question was made by an employee of petitioner, who was the sole witness in the case. A summary of his testimony follows.

Petitioner had no knowledge of the shipment in question until the merchandise arrived by truck at the port of entry on May 9, 1951, "during the evening hours between six o'clock and eight o'clock." The carrier, a trucking firm, assigned the papers to petitioner to make entry. No instructions had been received either from the Canadian shipper, Colwool Accessories, Ltd., of Montreal, Canada, or the ultimate consignee, J. & W. Knit Fabrics of Long Island City, N. Y., so the witness made entry on the basis of the value stated on the consular invoice. Simultaneously, with the filing of the entry, petitioner requested information from the appraiser, through the medium of a so-called "submission sheet," petitioner's exhibit 1, which the appraiser returned 2 days after entry with a notation to the effect that he had no information concerning the value of the merchandise.

Between the date of entry, on May 11, 1951, and the date of appraisement, on August 29, 1951, petitioner had two conversations with the appraiser, the substance of which was stated by the witness as follows:

Both in May and August we went before the appraiser Mr. Sullivan at Champlain, New York to see if there was further information or anything that we could do with this particular shipment and at that time I made a notation that the case was still pending, assuming that it was still pending before the C. I. E. in New York.

The witness further testified that he was also interviewed, prior to appraisement, by customs agents or representatives of the Treasury Department in connection with this shipment, and that throughout the entire period before appraisement, petitioner's file was at the disposal of the customs authorities, and at no time did petitioner withhold any information from the Government. It was not until a "few days before the appraisement" that petitioner first learned that the value stated on entry was not acceptable to the customs officials, but when petitioner was advised that its entered value was being questioned no attempt was made to amend the entry to meet the value suggested by the appraiser. After appraisement at the advanced value, no appeal for reappraisement was filed.

On cross-examination, the witness testified that during the entire period, while the matter of appraisement was pending, he contacted no one, other than the appraiser, and that the only thing he did to ascertain the correct dutiable value was to file the "submission sheet," exhibit 1, *supra*, and wait for the appraiser's action thereon.

Petitioner's brief cites the case of *Union Food Products Co. v. United States*, 13 C t. Cust. Appls. 343, T. D. 41253, to support counsel's argument that "as long as there is nothing in the transaction of entering merchandise for customs purposes calculated to put a reasonable, prudent man on inquiry, the fact that the im-

porter made no further inquiry does not show a lack of good faith." In the cited case, it was shown that the petitioner's business was the importation of cheese from Italy and that only 2 weeks elapsed between the date of purchase in Italy and the date of entry at New York. The importance of those facts to the conclusion reached by the court was stated as follows:

If the merchandise was purchased on or about the 11th, shipped on the 13th, and entered on the 29th of the same month, it seems to us that the period of time between making the inquiries and the time of making the entry was not such a long period of time as would have put a reasonably prudent person upon inquiry as to the probability of an advancement in price. Since there is no other fact or circumstance connected with the case which would have been calculated to have put importers upon inquiry, we see nothing connected with the whole transaction but what supports the belief that when the petitioners stated the value of the merchandise at the time of shipment they were acting in good faith, had no reasonable grounds to believe that their statement was untrue, and did not speak with reckless indifference as to its truthfulness.

No comparable condition exists in the present case. Here, there was a period of 3 months between entry and appraisement during which petitioner had conversations with the appraiser and was interviewed by other customs authorities. Such circumstances supplied ample opportunity for petitioner's witness, who testified to 6 years' experience in the customs brokerage business, to make his own investigation concerning the proper value of the shipment under consideration.

It is not sufficient for petitioner to rely entirely, as was done herein, on statements made by the appraiser in a "submission sheet." The true effect of such procedure was given in *United States* v. *H. S. Dorf & Co., of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392, wherein the court said that "it is no part of the official duty of such officer to supply the desired information," and "as indicated in the text of the submission sheet, information so given is in no way binding on customs officials in determining value, nor can such information be relied upon by the entrant to obviate the duty imposed upon him to ascertain and enter the merchandise at its true value."

The added obligation of one making inquiry through the medium of a submission sheet and receiving no information was stated in the *Dorf* case, *supra*, as follows: "Moreover, where a submission sheet has been returned with no information, that fact is sufficient to put a customhouse broker on notice so as to require that he seek further information as to value before making entry. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306."

In this case, a substantial period of time, between the date of entry and the date of appraisement, was available for petitioner to make inquiry as to value, either from foreign or domestic sources. Furthermore, the witness' conversations with the appraiser should have alerted petitioner, experienced in customs matters, that its entered value was questionable, if not entirely unacceptable.

The recent decision in the case of *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507, is in point. Referring to the provisions of section 489, *supra*, and the requirements in order to obtain relief thereunder, the court said:

When the here involved statute is dissected it is found that the person seeking remission must prove that the act of undervaluation was without any intent (a) to defraud the revenue of the United States; (b) to conceal or misrepresent the facts of the case; (c) to deceive the appraiser as to the value of the merchandise. Each of these three elements must be established by "satisfactory evidence."

No extensive citation of authorities is necessary to support the statement that the rule is thoroughly established that a mere categorical declaration by one seeking relief under section 489, *supra*, that he had no intention of doing any one of the three things, may not be accepted as of itself and by itself constituting "satisfactory evidence" within the meaning of the statute.

The record before us contains categorical denials by the witness of any intent to defraud, conceal, or deceive, but, as stated in the *Westerfield* case, *supra*, such statements, by themselves, are not sufficient for petitioner to obtain relief herein.

The attitude of petitioner during the period pertinent to the present litigation was not consistent with actions to be expected of the prudent and reasonable person seeking to make entry at a proper value. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *National Biscuit Co.* v. *United States*, 20 C. C. P. A. (Customs) 395, T. D. 46187. Petitioner's disposition was a passive one. The witness' conduct was entirely negative, relying completely on customs personnel to determine what petitioner was required to do.

Petitioner's responsibility to make entry at the proper value cannot be evaded by the fact, as pointed out in counsel's brief, "that the value finally used by the appraiser was the result of an agent's investigation, which investigation could not possibly have been carried on by the petitioner in this case because of the amount of time and expense required to make such investigation." In the case of *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70, the court very aptly stated that "the entrant of merchandise owes a duty to inform himself as to the correctness of his representations as to the value of his merchandise," and "a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute." What was said in the case of *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487, can be repeated here: "There was a duty upon the appellee [petitioner] to enter the merchandise at the proper value and that duty was not performed."

Counsel for petitioner, in their brief, cite several cases, not hereinabove mentioned, which involved a petition, like the one before us, that arose under the provisions of section 489, *supra*. *American Shipping Co.* v. *United States*, 10 Cust. Ct. 300, C. D. 771; *National Carloading Corp. et al.* v. *United States*, 16 Cust. Ct. 138, C. D. 1001; *Norman G. Jensen* v. *United States*, 22 Cust. Ct. 241, Abstract 52876; *Southern Press Cloth Manufacturing Co.* v. *United States*, 4 Cust. Ct. 482, Abstract 43723; *Naumes Forwarding Service* v. *United States*, 11 Cust. Ct. 320, Abstract 49028; *Devonshire Mills Co.* v. *United States*, 19 Cust. Ct. 173, Abstract 52046; *C. J. Tower & Sons* v. *United States*, 16 Cust. Ct. 219, Abstract 50867; and *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 395, T. D. 41322. A careful examination has been made of all of those cases and in each we find a factual situation materially different from the record now before us. None of those cases, therefore, has application herein. It is well recognized that, in petitions arising under section 489, each case presents a set of facts peculiar to itself, and, therefore, the disposition of an individual petition, like the one before us, rests with the facts and circumstances surrounding the entry in question. *Glendenning, Mc-Leish & Co.· (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 387, T. D. 41320.

On the basis of the present record, and for the reasons hereinabove set forth, we hold that petitioner failed to meet the requirements of section 489, *supra*, essential to obtain remission of the additional duties applied for. The petition is, therefore, denied and judgment will be rendered accordingly.